# EXHIBIT C

SUPERVISORY AGREEMENT

This Supervisory Agreement is made and is effective this 8th day of July 1987, by and between First Federal Savings and Loan Association, Annapolis, Maryland (hereinafter "First Federal" or the "Association") and the Federal Home Loan Bank Board ("FHLBB"), acting through its Supervisory Agent at the Federal Home Loan Bank of Atlanta ("Supervisory Agent").

WHEREAS, the Supervisory Agent is of the opinion that: (1) First Federal has engaged in certain transactions in interest rate futures and financial options in violation of Sections 563.17-4 and 563.17-5 of the Rules and Regulations of the Federal Savings and Loan Insurance Corporation ("Insurance Regulations"), 12 C.F.R. Sections 563.17-4 and 563.17-5 respectively; (2) First Federal has failed to account for losses incurred in connection with such transactions in violation of those regulations and generally accepted accounting principles; (3) First Federal, but for improperly accounting for such losses would have regulatory capital below the minimum level required by Section 563.13 of the Insurance Regulations; and (4) First Federal's investment in service corporations exceeds the limitations imposed by Section 545.74(c) of the Rules and Regulations for Federal Associations ("Federal Regulations"), and that such violations provide grounds for the initiation of cease and desist proceedings against the Association by the FHLBB; and

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER
F-FA-A-0022904



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FFA035 0187

WHEREAS, in the interest of cooperation, and without admitting any allegations made in connection therewith, First Federal is willing to enter into this agreement to avoid the initiation of formal enforcement proceedings against First Federal by the FHLBB;

WHEREAS, the FHLBB is willing to forbear from the initiation of formal enforcement proceedings on the subjects covered by this agreement for so long as First Federal is in compliance with the provisions of the agreement that pertain to such subjects; and

WHEREAS, it is understood by the parties that the execution of this agreement does not preclude the FHLBB from taking further supervisory action with regard to any matters which are not the subject of this agreement and which the FHLBB considers appropriate under the circumstances, and is without prejudice to any right First Federal may have to challenge such further supervisory action.

NOW, THEREFORE, in consideration of the FHLBB's above stated forbearance from the initiation of enforcement proceedings against First Federal, and the undertakings of First Federal recited below, it is hereby agreed among the parties that:

1. Prior to engaging in any transaction in interest rate futures or financial options as defined in Sections 563.17-4 and 563.17-5 of the Insurance Regulations, First Federal shall have received written notice of no objection to First Federal's policies, procedures and specific programs from the Supervisory Agent. First Federal shall submit policies, procedures and other documentation as required by Sections 563.17-4 and 563.17-5 of the



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER
F-FA-A-0022905

SA 0327

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FFA035 0188

Insurance Regulations or as otherwise requested by the Supervisory Agent. Said policies and procedures shall at a minimum address, to the satisfaction of the Supervisory Agent: (a) a description of the specific hedge program(s) as approved by the Board of Directors ("Directors"); (b) an explanation of how the particular strategy serves to reduce the Association's interest rate risk exposure; (c) the relationship of the strategy to the Association's operations; (d) the potential risks involved should the Association's interest rate assumptions prove incorrect; (e) a written analysis that supports the hedge ratio used; (f) an identification of the specific items hedged; (g) the maintenance of a complete contract register; (h) the identification of a specific program for monitoring the hedge programs which specifies the frequency with which the Directors will review the approved hedge program(s); and (i) the establishment of total outstanding position limits. First Federal shall employ an independent consultant, whose compensation shall not be based in any way on transactions generated by First Federal, to review the Association's transactions in interest rate futures and financial options. First Federal shall submit the report of such independent consultant to the Directors and to the Supervisory Agent within ten days after each month's end in which transactions occur; such report shall demonstrate, to the satisfaction of the Supervisory Agent compliance with the aforementioned requirements and shall specifically demonstrate a satisfactory correlation as defined by Financial Accounting Standards Board ("FASB") No. 80 between the hedge and the effect on the Association's interest rate risk exposure. In addition, each transaction involving



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER
F-FA-A-0022906



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FFA035 0189

interest rate futures or financial options shall be promptly reported to the Supervisory Agent.

2. First Federal shall retain an independent accounting firm to which the Supervisory Agent does not object, to review all of First Federal's transactions in interest rate futures and financial options from January 1, 1985 to the date of this agreement, including specifically those discussed in the July 1, 1986 report of examination and to issue an opinion on the appropriate accounting treatment for the losses associated with such transactions pursuant to generally accepted accounting principles. In addition, such independent accounting firm shall review First Federal's recordkeeping procedures, including internal systems and controls and indicate what adjustments, if any, are necessary to ensure the required documentation and recordation of future transactions involving interest rate futures and financial options. The report of such independent accountant shall be submitted to the Directors and to the Supervisory Agent within 60 days of the date of this agreement. Said report shall be subject to review and acceptance by the Director of Examinations and the Supervisory Agent.

3. First Federal shall recognize losses incurred in connection with transactions in interest rate futures and financial options as directed by the Supervisory Agent.

4. Within 60 days of the date of this agreement, First Federal shall develop and submit to the Supervisory Agent a comprehensive plan detailing projected business strategies and operations ("business plan") for the Association and its



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER
F-FA-A-0022907



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FFA035 0190

subsidiaries for the period of time commencing with the date of this agreement through December 31, 1990. Upon written notice of no objection to such business plan from the Supervisory Agent, First Federal shall adopt and implement such plan forthwith. First Federal shall not materially deviate from the business plan without prior receipt of a written notice of no objection to such deviation from the Supervisory Agent. The business plan shall include pro forma quarterly financial statements (with relevant assumptions) for each fiscal year, or part thereof, covered by the plan, shall be consistent with providing sound and economical home financing, and shall be prepared in accordance with the Federal Home Loan Bank of Atlanta's General Instructions for the Preparation of a Business Plan. The business plan shall specifically incorporate the following:

a. A plan to increase First Federal's level of capital on a generally accepted accounting principles basis and to meet and maintain the minimum level of regulatory capital required by Section 563.13 of the Insurance Regulations.

b. A plan to divest First Federal's investment in service corporations which exceeds the limitations of Section 545.74(c) of the Federal Regulations. Said divestiture shall result in no loss to First Federal or its service corporations. The plan shall also include policies, procedures and internal



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER F-FA-A-0022908



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FFA035 0191

controls to ensure that First Federal and its service corporations shall at all times remain in compliance with the investment limitations of Section 545.74(c) of the Federal Regulations.

5. First Federal shall submit variance reports to the Supervisory Agent within 30 days of each calendar quarter end. Said variance reports shall have been approved by the Directors and shall compare actual balance sheet items and operating results with business plan projections. All material deviations shall be fully explained to the satisfaction of the Supervisory Agent.

6. The Directors shall submit a monthly report to the Supervisory Agent describing the efforts and actions undertaken and accomplished during the month in furtherance of paragraphs 4a and 4b above. Said report shall be submitted by the end of each following month.

7. Within 60 days of the date of this agreement, First Federal shall develop and submit to the Supervisory Agent a budget presented on a monthly basis format for the six month period July 1, 1987 through December 31, 1987. On or before December 31, 1987, First Federal shall submit to the Supervisory Agent a budget in similar format for the year beginning January 1, 1988. On or before the first day of January, 1989, First Federal shall submit to the Supervisory Agent a budget in similar format for the year ending December 31, 1989.

All technical words or terms used in this agreement, for which meanings are not specified or otherwise provided by the provisions



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER F-FA-A-0022909



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FFA035 0192

of this agreement, shall insofar as applicable, have meanings as defined in the statutes and regulations enforced by the FHLBB and any such technical words or terms used in the agreement and undefined in said statutes and regulations shall have meanings that accord with the best custom and usage in the savings and loan industry.

This agreement has been duly authorized, executed and delivered, and constitutes, in accordance with its terms, a valid and binding obligation of First Federal. It is understood and agreed that this agreement is a "written agreement entered into with the Board" as that phrase is used in Section 5(d)(2) of the Home Owners' Loan Act (12 U.S.C. Section 1464(d)(2)(1982)).

The terms and provisions of this agreement shall be binding upon, and inure to the benefit of, the parties hereto and their successors in interest.

This agreement shall remain in effect until terminated by the FHLBB acting through its Supervisory Agent at the Federal Home Loan Bank of Atlanta. The Supervisory Agent will consider written requests for termination of this agreement following the completion of two examination cycles or at the end of three years, whichever is greater, if First Federal has demonstrated satisfactory compliance with the terms of this agreement. Any decision to approve such termination will be at the discretion of the Supervisory Agent, who will not withhold such approval unreasonably.



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER
F-FA-A-0022910

SA 0332

CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FFA035 0193

IN WITNESS WHEREOF, the parties have executed this agreement in person.

FEDERAL HOME LOAN BANK BOARD

By: [signature]
Supervisory Agent
Federal Home Loan Bank
of Atlanta

FIRST FEDERAL SAVINGS
AND LOAN ASSOCIATION

By a majority of its Directors

[signatures]



CONFIDENTIAL-SUBJECT TO
PROTECTIVE ORDER
F-FA-A-0022911



CONFIDENTIAL MATERIAL - SUBJECT TO PROTECTIVE ORDER FFA035 0194