**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FIRST ANNAPOLIS BANCORP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 94-522C** |
| | ) | **(Judge Williams)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**
**PLAINTIFF'S SUPPLEMENTAL EXPERT WITNESS IDENTIFICATION**

Plaintiff, First Annapolis Bancorp, Inc. ("Bancorp"), by and through counsel, hereby opposes Defendant's Motion to Strike Plaintiff's Supplemental Expert Witness Identification, and states as follows:

## INTRODUCTION

As explained below, the Government will not be prejudiced if Dr. Robert E. Litan ("Dr. Litan") is allowed to testify at trial. He was timely identified as an expert witness by Plaintiff the Federal Deposit Insurance Corporation ("FDIC"), produced his expert report and was throughly deposed by the Government, all of which took place over six years ago. Indeed, considering the multiple violations by the Government in this case of the procedural orders herein, the Government should not now be able to insist on technical compliance with Procedural Order No. 2. If anyone has been prejudiced on grounds of the lack of disclosure relating to the issue of damages, it has been Bancorp. The Government has never filed a substantive opposition to Bancorp's Motion for Entry of Partial Summary Judgment on Damages, and to date, Bancorp still does not know what defenses, if any, the Government has to its damage claim for restitution.

Moreover, Dr. Litan's testimony should not be excluded because of recent case law by the Federal Circuit Court. The cases are factually inapposite, and Bancorp is only required to establish a reasonable probability of damage, uncertainty as to the exact amount of damages cannot serve as the basis to strike Dr. Litan's testimony.

**PROCEDURAL BACKGROUND**

Pursuant to the various scheduling orders entered herein, the deadline for the parties to conclude fact discovery was set for July 31, 1999. However, because the Government had notified Plaintiff of its desire to depose a third party witness, David Cook, well before the close of discovery and the parties had trouble locating Mr. Cook and finding a date available for his deposition prior to the close of discovery, the parties consented to a short extension of the discovery deadline to conduct Mr. Cook's deposition. See Affidavit of Elizabeth A. McFarland, attached to Plaintiff's Opposition to Defendant's Motion for Leave to Take Depositions Out of Time, filed September 16, 1999, at ¶9-10. The Court approved this extension and Mr. Cook's deposition took place on August 5, 1999. Id. ¶10.

On the same day that the discovery deadline expired, August 5, 1999, Plaintiff filed its Motion for Entry of Partial Summary Judgment on Damages. Plaintiff sought a ruling by the Court that it was entitled as a matter of law to recover the amount of its investment in First Annapolis in the amount of $13,665,907. The Government did not file an opposition to Plaintiff's Motion. Instead, on August 31, 1999, the Government filed a Motion to Stay Briefing on Plaintiff's Motion for Entry of Partial Summary Judgment on Damages. In that Motion, the Government requested that "this Court stay Defendant's briefing requirements until both a decision on liability is rendered and after the Defendant has the opportunity to depose Mr. Heiden regarding his final expert report." Defendant's Motion to

Stay Briefing on Plaintiff's Motion for Entry of Partial Summary Judgment on Damages, filed August 31, 1999, at 3. Although the matter was discussed at various scheduling conferences before Judge Horn, the Court never ruled on either Motion. To date, the Government has never filed an opposition to Plaintiff's Motion for Entry of Partial Summary Judgment on Damages. Accordingly, Plaintiff does not know, and never has known, what defenses if any, the Government has to its request to recover the amount of its investment in First Annapolis in the amount of $13,665,907.

After the discovery deadline expired, pursuant to the Procedural Order No. 2: Discovery Plan, plaintiffs were required to identify their expert witnesses within thirty (30) days. See Exhibit D to Defendant's Motion at 8-9. On August 25, 1999, Bancorp identified Edward Heiden ("Dr. Heiden") as its expert witness on damages and thereafter Dr. Heiden issued his Expert Report. On August 31, 1999, Plaintiff FDIC designated Dr. Litan as its expert witness and thereafter Dr. Litan issued his Expert Report. A copy of Dr. Litan's Report is attached hereto as Exhibit A.[1] In that Report, Dr. Litan provides his "expert opinion on the damages recoverable by First Annapolis Savings Bank (First Annapolis or plaintiff) due to the Federal Government's (Government's or defendant's) breach of an August 1988 contract between First Annapolis and the Federal Home Loan Bank Board." Id. at 1. In so doing, Dr. Litan determined the value of the goodwill and capital ratio forebearances which were lost because of the breach of the contract. Id. at 3-4. He calculated that the damages sustained from the loss of these two forebearances were $25,800,000 at the time of the conversion in August 1988 and

[1] This Report includes the Exhibits which were attached to the Report (which were not included by the Government in the copy of the Report attached to its Motion).

$27,900,000 at the time the contract was breached in August 1989. Id. at 4, 25 and Exhibits 3-11 to Dr. Litan's Report.

On March 20, 2000, Dr. Litan was deposed by the Government. See Exhibit D to Defendant's Motion. During that deposition, Dr. Litan was examined in detail about the basis for his damages. Id.[2]

In June 2006, this case proceeded to trial on the issue of whether or not there was a prior material breach of contract on grounds of shareholder loans. The parties are awaiting a ruling from the Court on the issues presented during the trial.

On November 17, 2006, Plaintiff filed its Supplemental Expert Identification, in which it named Dr. Litan as an expert witness to testify at the upcoming trial on damages. That trial has now been scheduled to commence on March 19, 2007.

## ARGUMENT

### I. The Government Will Not Be Prejudiced If Dr. Litan Is Allowed to Testify.

There can be no dispute that Dr. Litan was timely designated by the FDIC as an expert witness in this case. He was designated on August 31, 1999, which was within 30 days of the end of the discovery deadline, which, as extended, was August 5, 1999. There also can be no dispute that Dr. Litan's Expert Report was issued on October 29, 1999, and the Government has had over seven years to examine his opinions and calculations set forth therein. Exhibit A at 26.

[2] On February 1, February 2 and March 20, 2000, Dr. Heiden was also deposed by the Government.

It is also undisputed that the Government conducted Dr. Litan's deposition, during which, as the Government concedes, he "was deposed at length concerning the basis of his opinions as to the alleged damages suffered by First Annapolis." Defendant's Motion at 4.

Moreover, there can be no prejudice to the Government because Plaintiff designated Dr. Litan on November 17, 2006, approximately four months before trial, which gives the Government more than ample time to prepare for his testimony.

Indeed, the sole assertion of prejudice by the Government is that "we were unable to question him concerning how or to what extent Bancorp suffered any damages because he expressly stated that is was 'none of his business.'" Id. This assertion is a feigned expression of prejudice. There is no prejudice because the damages for the loss of the forebearances are the same for both First Annapolis and Bancorp. As the Government knows, First Annapolis was a wholly owned subsidiary of Bancorp. Bancorp owns 100% of the stock of First Annapolis. Thus, any loss incurred by First Annapolis would flow directly to Bancorp. Moreover, the forebearances in question were a term and condition of the contract by and between Bancorp and the Government. Since, as set forth in his Report, Dr. Litan determined the value of the forebearances, the amount of the loss of the forebearances is a loss sustained by Bancorp.

Considering the foregoing, there was nothing else for the Government to examine Dr. Litan about. Nothing in his Report has changed. He will testify at trial about the same amount of damages for the loss of the same forebearances.

The case cited by the Government, Trilogy Communications v. Times Fiber Communications, 109 F.3d 739 (Fed. Cir. 1997), is inapposite. In Trilogy Communications, plaintiff's expert witness

submitted an expert report within the time period established by the district court. Id. at 744. The expert report, however, lacked certain information required by Rule 26(a)(2) of the Federal Rules of Civil Procedure. Id. The court granted plaintiff an extension of time to supplement the report with the missing information. Id. Plaintiff then submitted a second expert report, a rebuttal report, and an affidavit by the expert. Id. These documents did not merely supplement the original report, but rather contained new opinions and information. Id. The Federal Circuit affirmed the ruling by the district court ruled that to the extent the supplement report and affidavit contained new opinions not set forth in the original report, they should be stricken from the record. Id. at 745.

In contrast to the facts in Trilogy Communications, in this case Bancorp does not seek for Dr. Litan to render any new opinions that were not set forth in his original report. Instead, it merely intends for Dr. Litan to testify as to the value of the forebearances, consistent with the opinions set forth in his expert report.

The other reason given by the Government why Dr. Litan should not be allowed to testify is that the literal terms of Procedural Order No. 2, which provide that "no opinion testimony will be received from" a witness that was not designated by a plaintiff "on behalf of the plaintiff," should be enforced. During the recent course of these proceedings though, the Court has taken the position that the prior procedural orders entered herein may not be strictly enforced when there is no prejudice to the opposing party. For instance, the Court allowed the Government to conduct the depositions of the shareholders who purchased stock in Bancorp, even though the depositions were expressly prohibited by terms of Procedural Order No. 2 and the Order entered by Judge Hodges on November 24, 1999. The Court has also given the Government the opportunity to present its defenses of a prior material

breach of contract on grounds of shareholder loans and investments in service corporations despite express requirements in multiple Orders of this Court to disclose such defenses.

Furthermore, the Government can hardly insist on technical compliance with Procedural Order No. 2, when it has committed multiple violations of the Orders of this Court. As mentioned above, it violated both the terms of Procedural Order No. 2 and Order entered by Judge Hodges on November 24, 1999. As set forth in detail in Plaintiff's Post-Trial Brief and Reply to Defendant's Post-Brief, during the course of these proceedings the Government has also violated the Case Management Order, the August 21, 1997 Order, the Show Cause Order, the March 23, 1998 Order and the May 16, 2006 Order of this Court. Considering the multiple violations of these Orders by the Government, it is disingenuous for the Government to now insist on technical compliance with the disclosure requirements for an expert witness in Procedural Order No. 2, when it has suffered no prejudice.[3]

**II. Dr. Litan's Testimony Is Not Barred By Recent Case Law.**

As a threshold matter, at trial Bancorp is not required to prove its damages with mathematical certainty. LaSalle Talman Bank, F.S.B. v. United States, 317 F.3d 1363, 1374 (Fed. Cir. 2003). "If a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery." Locke v. United States, 151 Ct.Cl. 262, 283 F.2d 521, 524 (1960) (citing Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555 (1931).

---

[3] Indeed, if any party has suffered prejudice based on the lack of disclosures concerning damages, it is Bancorp, not the Government. To date, the Government still has not responded to Plaintiff's Motion for Entry of Partial Summary Judgment on Damages, which was filed on August 5, 1999, **over seven years ago**. Bancorp still does not know what defenses, if any, the Government has to its claim for restitution damages.

Considering the foregoing, the recent case law cited by the Government as the basis to strike Dr. Litan's testimony prior to trial is not dispositive. In Granite Mgt. Corp v. United States, 416 F.3d 1373, 1381-82 (Fed. Cir. 2005) and Fifth Third of Western Ohio v. United States, 402 F.3d 1221, 1236-37 (Fed. Cir. 2005), proffered testimony by plaintiff's expert witness Professor Christopher James was disregarded. Professor James attempted to calculate the amount it would have cost the thrift to replace goodwill capital by assuming that the thrift issued preferred stock to raise the money. Id. In both cases the thrift (or the acquiring thrift) was the sole plaintiff. Id.

Obviously, the Court in Granite and Fifth Third did not consider Dr. Litan's Report or the calculations that he made to determine the value of the forebearances. Without a detailed comparison of the exact methodology used by Professor James with the methodology used by Dr. Litan, at this juncture of these proceedings it is impossible to exclude Dr. Litan's testimony as a matter of law based upon Granite and Fifth Third. Indeed, in his Report, Dr. Litan even noted that he had reviewed "the reports of experts in other *Winstar* goodwill cases," including, as he referenced in footnote no. 3 of his Report, the "Expert Report of Christopher M. James, Ph.D." Exhibit A at 4-5 and 5 n.3. He then states that "[a]pplying the valuation assumptions of several of those experts in this case would produce significantly higher damages than those I present here." Id. at 5. Moreover, although Dr. Litan did calculate "the present value of the net cash flows to First Annapolis from issuing a hypothetical security to the FSLIC, such as preferred stock," he did so in a very precise manner to establish a "reasonable probability" of the amount of damages sustained, which is all that is required. Exhibit A at 4; Locke, 283 F.2d at 524.

There is another significant fact which distinguishes this case from Granite and Fifth Third. In Granite and Fifth Third, only the thrift (or the acquiring thrift) was the plaintiff. By contrast here Bancorp, the holding company, which is authorized to issue stock, is the plaintiff. This distinction was noted by the Court in each case. See Granite, 416 F.3d at 1381 ("Unlike the present case however, in Home Savings the parent corporation was also a plaintiff in the litigation, in addition to the acquiring thrift, and the parent also sought to recover its damages"); Fifth Third, 402 F.3d at 1237 ("Citizens was a mutual organization at the time of the breach and therefore could not have issued preferred stock without first converting to stock form").

Indeed, in Home Savings of America v. United States, 399 F.3d 1341, 1353-55 (Fed. Cir. 2005) the Federal Circuit Court held that the Court of Federal Claims did not abuse its discretion in basing a damage award for lost supervisory goodwill upon hypothetical replacement costs. In Granite, decided after Home Savings, the Federal Circuit Court explained the difference in the facts between the two cases, and noted that "the two cases differ in two critical respects." 416 F.3d at 1382. First, the Court noted that in Home Savings, "the parent corporation was also a plaintiff in the litigation, in addition to the acquiring thrift, and the parent also sought to recover its damages." Id. Second, the Court stated that "there is no contention that Granite itself actually raised any additional capital in the private market to replace the lost regulatory goodwill," and then noted that the parent corporation raised additional capital in subordinated debt and preferred stock, which it infused in the thrift. Id. In this case, Bancorp, the holding company is the plaintiff, and, although it did not sell preferred stock to replace lost regulatory goodwill, it was authorized to sell stock and in fact did raise capital which it

infused into First Annapolis. Therefore, at the present posture of these proceedings, Dr. Litan's testimony should not be excluded as a matter of law.

**CONCLUSION**

WHEREFORE, Plaintiff, First Annapolis Bancorp, Inc., respectfully requests that Defendant's Motion to Strike Plaintiff's Supplemental Expert Witness Identification be denied.

Respectfully submitted,

Dated: December 20, 2006

COOTER, MANGOLD, TOMPERT
& KARAS, L.L.P.

s/Dale A. Cooter

Dale A. Cooter
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC 20015
Tel: (202)537-0700

Attorney for Plaintiff
First Annapolis Bancorp, Inc.

Of Counsel:

James E. Tompert
COOTER, MANGOLD, TOMPERT
& WAYSON, L.L.P.
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC 20015
Tel: (202)537-0700
FAX: (202)364-3664

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of December 2006, a copy of the foregoing Opposition and Exhibit was filed electronically pursuant to the Electronic Case Filing procedures of the United States Court of Federal Claims, with service by Notice of Electronic Filing to the designated attorneys and parties of record.

s/Dale A. Cooter
Dale A. Cooter