IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **FIRST ANNAPOLIS BANCORP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 94-522C** |
| **v.** | ) | **(Judge Williams)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL EXPERT WITNESS IDENTIFICATION**

Pursuant to Rules 1 and 7 of the Rules of the Court of Federal Claims, defendant, the United States, respectfully submits this reply brief in support of our motion to strike the supplemental expert witness identification filed by plaintiff, First Annapolis Bancorp, Inc. ("Bancorp") on November 17, 2007.

**I. Bancorp Has Failed to Articulate Any Reason Why It Failed To Comply With The Court's Orders Regarding The Designation Of Dr. Litan As An Expert, Nor Why It Should Be Permitted To Advance A New Damages Theory Upon The Eve Of Trial**

As we demonstrated in our motion to strike, Bancorp failed to identify Dr. Litan as one of its experts in accordance with the Court's procedural orders for the Winstar-related cases. Additionally, Dr. Litan has not prepared an expert report regarding the alleged damages suffered by Bancorp, nor did he opine upon such damages in the report that he prepared for the Federal Deposit Insurance Corporation ("FDIC").

Bancorp responds to our motion to strike by claiming: 1) that we will not be prejudiced should Dr. Litan, the FDIC's expert, be permitted to testify on behalf of Bancorp; and 2) that Bancorp need not be required to comply with the Winstar procedural orders due to our alleged non-compliance. Bancorp is wrong on both counts.

First and foremost, Bancorp utterly fails to explain why it should be permitted to assert a new damages theory seven years after discovery closed in this case, and on the eve of trial. During the last status conference, when the trial date was still set for January 8, 2007, the Court inquired as to whether the parties had expert witnesses for the upcoming trial. It was at that time that counsel for Bancorp indicated that it had not one, but two experts – Dr. Heiden and Dr. Litan. However, this was the first time in this case that Bancorp claimed Dr. Litan as one of its experts. As we explained in our motion, only the FDIC had designated Dr. Litan as an expert and his report deals solely with the thrift's alleged damages, not those of Bancorp.

Until last month, Bancorp had asserted only two damages claims in this case – one for restitution and the other for lost profits. At no time prior to the November 16, 2006 status conference did Bancorp ever advance a damages claim involving the hypothetical cost of replacing goodwill with preferred stock. This claim, advanced only by the FDIC for the loss of the alleged value of the goodwill and other forbearances to the thrift, was a claim of the thrift, First Annapolis.

Bancorp has yet to offer any reason why it should be permitted to proffer such a claim at this late date in the litigation. Indeed, Bancorp does not even address this issue in its response brief. It has not claimed excusable neglect nor any other reason for its failure to state such a claim before now. Instead, it merely claims, incorrectly, that we will not be prejudiced by the assertion of such a claim by Bancorp at trial. This is not sufficient. Indeed, it is incumbent upon Bancorp to demonstrate why it should not be held to the requirement of Procedural Order No. 2, which dictates that: "If a plaintiff fails to comply with the provisions of this section with regard to any expert witness it proposes to call [i.e., providing a final written report prepared and signed

by each witness], **no opinion testimony will be received from that witness on behalf of that plaintiff."** (Emphasis added).

Bancorp has failed to do so. Instead, Bancorp claims that it should not be required to abide by the Court's orders because we allegedly did not abide by them concerning our affirmative defense regarding loans to shareholders. However, Bancorp fails to acknowledge that we renewed our motion for discovery at the invitation of the Court. Moreover, our motion was predicated upon the fact that we had learned of these improper loans at the end of the discovery period in August 1999, and that we filed our motion for additional discovery within a matter of weeks. Accordingly, Bancorp cannot complain that we did not follow the requirements of any procedural order given that we renewed our motion at the invitation of the Court, which was granted.

In this instance, Bancorp filed its notice of supplemental expert witness identification without seeking leave of the Court and without justification for its delay of more than seven years. Moreover, as explained above, Bancorp's belated designation of Dr. Litan did more than add an additional witness to Bancorp's witness list; it added a new damages claim to the case that had never before been advanced by Bancorp. Until now, Bancorp has failed to advance a claim for the value of the goodwill and other forbearances and has offered no justification why it should be permitted to pursue a damages claim that it has never advanced until now, nor why it should be permitted to call another party's expert to testify at trial.

Bancorp has no proper justification for failing to identify Dr. Litan as one of its experts. Dr. Litan and his opinions have not been a part of this case since this Court dismissed the FDIC from the case in 2002. First Annapolis Bancorp, Inc. v. United States, 54 Fed. CL. 529 (2002).

Indeed, if the FDIC were still in this case, Bancorp would not be permitted to make such claims, as the loss of the goodwill and forbearances ran to the thrift, not the holding company. Bancorp could not record the goodwill on its balance sheet and could not employ the other forbearances. Accordingly, it makes no sense for Bancorp to advance such a theory.

Any opinions expressed by Dr. Litan concerning any damages suffered as a result of the alleged breach is relevant, if at all, to the FDIC, and should not be considered as evidence of any damages allegedly suffered by Bancorp. To the extent that Dr. Litan had any opinions regarding Bancorp's alleged damages, he should have issued a written report containing those opinions and we should have had the opportunity to depose him regarding that report. The time for the production of expert reports, depositions of the expert witnesses, and identification of new damages theories has long since passed. Accordingly, Dr. Litan should not be permitted to offer testimony at trial.

## II. Dr. Litan's Hypothetical Cost Of Replacement Model Has Been Rejected By Both This Court And The Federal Circuit

As we explained in our motion to strike, it would be a waste of the Court's time and resources to permit Bancorp to call Dr. Litan to testify at trial because his damages model is based upon the hypothetical cost of replacing the goodwill and other forbearances. As explained in our motion, the opinions articulated by Dr. Litan in the expert report he prepared for the FDIC have been repeatedly rejected by the Federal Circuit, most recently in Granite Mgt. Corp. v. United States, 416 F.3d 1373, 1381-82 (Fed. Cir. 2005), and Fifth Third of Western Ohio v. United States, 402 F.3d 1221, 1236-37 (Fed. Cir. 2005).

Bancorp claims, again incorrectly, that the Court should deny our motion to strike because the theory of damages as posited by Dr. Litan is a viable damages theory. Bancorp

responds to our motion by attempting to distinguish the two recent Federal Circuit opinions that we cited; however, Bancorp's attempts are to no avail. Bancorp relies upon minor differences in these cases which are irrelevant given the Federal Circuits' decisions.

In both Granite and Fifth Third, the plaintiffs put forward claims based upon a hypothetical cost of issuing preferred stock to replace the lost regulatory goodwill capital as a result of FIRREA. In both cases, the Federal Circuit upheld this Court's rejection of the plaintiff's model not because of the specifics of the methodology employed by the plaintiff's expert, but because of the simple fact that "[i]n neither case did the thrift actually issue any preferred stock," and, therefore, the plaintiff's damages were based "entirely on hypothetical costs that were never incurred." Granite, 416 F.3d at 1382.

Bancorp also responds by claiming that the decision in Home Savings of America v. United States, 399 F.3d 1341 (Fed. Cir. 2005) supports its claim for the hypothetical cost of replacing the goodwill and other forbearances; however, again, Bancorp is wrong. Indeed, the Federal Circuit's decision in Home Savings is easily distinguishable from the facts in this case. As Bancorp acknowledges, the Federal Circuit identified two critical factors that distinguished Home Savings from Granite. First, in Home Savings, both Home Savings and its parent (H.F. Ahmanson & Co.) were plaintiffs whereas in Granite, Granite's parent was not a plaintiff. This distinction was important because Home Savings' parent company (like Granite's) was the source of the replacement capital. In this case, however, Bancorp did not provide any replacement capital. Second, in contrast to Granite, in Home Savings "both the acquiring thrift in that case and its parent (who was also a party to that litigation) raised substantial capital following the loss of 'regulatory goodwill' under FIRREA . . . '[a]fter each of there capital

raisings, [the parent] contributed all the capital raised to Home Savings.'" Granite, 416 F.3d at 1382 (citing Home Sav. of Am., FSB v. United States, 57 Fed. Cl. 694, 700-02 (2003)).

Again, regardless of what differences may exist between Professor James' and Dr. Litan's methodologies, Bancorp cannot dispute that fact that, just like in Granite, neither Bancorp nor First Annapolis raised capital to replace the goodwill capital that was lost. Moreover, in Dr. Litan's model, it is the thrift, First Annapolis, and not Bancorp, that issues preferred stock. This conflicts with Bancorp's claim that it was authorized to issue stock, and that this somehow distinguishes the facts in this case from those in Granite and Fifth Third. Response Br. at 9.

Bancorp also conveniently ignores the many decisions of this Court on this very issue where this Court has repeatedly granted our motions for summary judgment with respect to similar hypothetical cost of replacement models. For instance, in First Federal Lincoln Bank v. United States, 68 Fed. Cl. 602, 610-11 (2005), the plaintiff thrift asserted not only a lost profits claim but also an alternative claim based upon the proposition that the Government should be required to repay the plaintiff the value of supervisory goodwill that the thrift lost as a result of the Government's breach. As in this case, the model proffered in First Federal was a preferred stock model. Id. at 611. Although the Court noted that the Federal Circuit had endorsed such a model when goodwill was actually replaced through the issuance of preferred stock, it categorically rejected such a damages model that was purely hypothetical. Specifically, the Court stated: **"Cost of replacement capital models based upon purely hypothetical undertakings, however, have almost been uniformly rejected as a matter of law."** Id. (citations omitted).

The Court in First Federal also noted that the thrift's actions were different from those of the thrift in Home Savings, which, like Bancorp, the plaintiff brought to the Court's attention. In distinguishing the two cases, the Court stated: "There [Home Savings], unlike Lincoln, the thrift did in fact raise replacement capital. Id. Because plaintiff's hypothetical cost of replacement model is based on a strategy Lincoln never actually pursued, the Court grants the government's motion for summary judgment on the plaintiff's claim for cost of replacement capital." Id. at 612. The result should be the same in this case, even if Bancorp were not barred by the Winstar procedural orders from belatedly raising this theory.

**CONCLUSION**

For the foregoing reasons, and those articulated in our motion, we respectfully request that the Court grant our motion to strike and bar Bancorp from calling Dr. Litan as a damages expert at trial. We also respectfully request that the Court resolve this motion as expeditiously as possible given that the outcome of this motion will affect the preparation of this matter for trial and will dictate whether our experts must prepare to address this damages claim at trial in addition to those already proffered by Bancorp.

Respectfully submitted,

STUART E. SCHIFFER
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Deputy Director

s/William F. Ryan

WILLIAM F. RYAN
Assistant Director

s/Richard B. Evans

RICHARD B. EVANS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-7760
Facsimile: (202) 305-7643

Attorneys for Defendant

OF COUNSEL:
TIMOTHY ABRAHAM
MELINDA HART
MARK PITTMAN
DELISA M. SANCHEZ
Trial Attorneys

January 3, 2007

CERTIFICATE OF FILING

I hereby certify that on January 3, 2007, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL EXPERT WITNESS IDENTIFICATION " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Richard B. Evans