**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FIRST ANNAPOLIS BANCORP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 94-522C** |
| | ) | **(Judge Williams)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE NEWLY DISCOVERED WITNESS FROM TRIAL, AND RESPONSE TO ALTERNATIVE MOTION FOR DISCOVERY**

Plaintiff, First Annapolis Bancorp, Inc. ("Bancorp"), by and through counsel, hereby opposes Defendant's Motion in Limine to Exclude Newly Discovered Witness from Trial, and responds to Defendant's Alternative Motion for Discovery, as follows:

## INTRODUCTION

As a preliminary matter, Plaintiff has no objection if the Government wishes to conduct the deposition of G. Thomas Daugherty ("Daugherty") prior to trial. Nor does Plaintiff object to the identification by the Government in its Witness List, due on February 16, 2007, of an expert witness on the issue of a tax gross-up.

Plaintiff otherwise objects to the request by the Government to exclude Daugherty as a witness at trial. Bancorp has complied both with Procedural Order No. 2 and the Scheduling Order entered herein. Despite the feigned protestations by the Government, there will be no unfair prejudice to the Government if Daugherty is allowed to testify on the issue of a tax gross-up. Instead, Bancorp will be severely prejudiced if Daugherty is not allowed to testify on this issue, which could mean a loss of at

least $5,470,000 in additional damages rightly due Bancorp under the decision in Home Savings of America, FSB v. United States, 399 F.3d 1341, 1355-1356 (Fed. Cir. 2005) issued by the United States Court of Appeals for the Federal Circuit on March 7, 2005.

In the event the Court is inclined to entertain the request by the Government to strike Daugherty as a witness at the upcoming trial, Plaintiff requests that this issue be addressed in the telephonic conference call presently scheduled with the Court on February 7, 2007.

## PROCEDURAL BACKGROUND

On August 11, 1997, Procedural Order No. 2: Discovery Plan was entered herein. That Order, provides, in pertinent part that within 30 days after the commencement of discovery, "a party shall, without awaiting a discovery, provide to the other parties, **to the extent known**, the name and title of any current or former employee, agent, or representative of a party likely to have discoverable information relevant to the allegations in the Complaint, and any Cross-claim or Counterclaim, identifying the subject of the information." Procedural Order No. 2: Discovery Plan, at 7 (emphasis supplied). The Order does not provide that if a potential witness is not disclosed, the witness will not be allowed to testify at trial.

On May 1, 1998, Bancorp filed its Initial Disclosure, which included a list of witnesses, to the extent known at the time, likely to have discoverable information relevant to the allegations in the Complaint. A copy of Bancorp's Initial Disclosure is attached to the Government's Motion. Daugherty was not included in Bancorp's witness list, because he was not a known witness at the time. Indeed as of May 1, 1998, a claim for a tax gross-up of a damage award in a Winstar case, or otherwise, was not even recognized in the Federal Circuit. It was not recognized until approximately

seven years later when the Federal Circuit issued its opinion in Home Savings of America, FSB v. United States, 399 F.3d 1341, 1355-1356 (Fed. Cir. 2005).

On May 1, 1998, the Government filed Defendant's Initial Disclosures, which included a list of witnesses likely to have discoverable information. A copy of Defendant's Initial Disclosures is attached hereto as Exhibit A. As of May 1, 1998, Daugherty was not the President of Bancorp. He did not become President until October 29, 1998, or thereabouts.

On August 5, 1999, fact discovery in this case was supposed to have been completed. After the discovery deadline though, at the request of the Government, the Government conducted a third session of the deposition of Douglas Parran, and most recently, over the objection of Bancorp, the Government conducted depositions of shareholders in Bancorp.

On March 7, 2005, the Federal Circuit issued its opinion in Home Savings of America, FSB v. United States, 399 F.3d 1341, 1356 (Fed. Cir. 2005), in which it held, for the first time, that a tax gross-up is appropriate when a taxable award compensates a plaintiff for lost monies that would not have been taxable." In so doing the Court explained:

> The Court of Federal Claims properly adjusted the damages award to reflect tax consequences. The parties cite to no Federal Circuit authority that deals specifically with this issue, and we have found none. We adopt the rule of other courts that a tax gross-up is appropriate when a taxable award compensates a plaintiff for lost monies that would not have been taxable.

Id (citations omitted). The Court then affirmed the tax gross-up of the damage award to compensate for taxes that the parent company of the thrift, Washington Mutual, would have to pay on the award. Id. at 1346, 1356.[1]

In June 2006, a trial was held before the Court on the issue of prior material breach of contract by Bancorp. Daugherty was present during the trial as the corporate representative and President of Bancorp. During that trial, Jeffrey Sweeney, Park T. Zimmerman, Roy Cowdrey and Marvin Taylor testified as witnesses for the Government. None of these witnesses were disclosed by the Government in its Initial Disclosures (and none of them were listed in Bancorp Initial Disclosures either). See Exhibit A.

On December 8, 2006, a Scheduling Order was entered herein. The Schedule provided that on December 27, 2006, there would be a "[m]eeting of counsel pursuant to paragraph 13 of Appendix A with exchange of initial exhibit and witness lists." The schedule then provided that on January 15, 2007, Plaintiff's contentions of fact and law were due, "along with final witness and exhibit lists."

On December 27, 2006, there was a meeting of counsel as provided for in the Scheduling Order. At that meeting, counsel for Plaintiff hand delivered a copy of Plaintiff's Initial Witness List to counsel for the Government. Exhibit B, hereto. In that List, Plaintiff designated, Daugherty as a witness to testify on the issue of a tax gross-up. Id. at 3.

---

[1] In Home Savings, the damage "award of $80,936,00 was 'grossed up' to $134,045,000 to compensate for taxes Ahmanson's present parent company, Washington Mutual would have to pay on the award." Id. at 1346.

At that same meeting, the Government hand delivered a copy of its Witness List to counsel for Plaintiff. Exhibit C, hereto. In that List, the Government identified Jean Rankin ("Rankin") as a potential witness. Id at 1, 5. Rankin was not listed in the Government's Initial Disclosures. Compare Exhibit A with Exhibit C.

On January 16, 2007, Bancorp filed its Contentions of Fact and Law herein. In its contentions of fact, Bancorp alleged that it was entitled to a tax gross-up, pursuant to Daugherty's testimony. Plaintiff's Contentions of Fact and Law, filed January 16, 2007, at 9, ¶31. In its contentions of law, Bancorp alleged that "[a]n award of damages for restitution, reliance damages or cover costs to Bancorp in this case should be adjusted to reflect the tax consequences of the award," and cited to the Home Savings case. Id. at 19, ¶26.

At the same time that Bancorp filed its Contentions of Fact and Law on January 16, 2007, Bancorp also filed its final Witness List, in which it once again designated Daugherty as a witness to testify about a tax gross-up. Plaintiff's Witness List, filed January 16, 2007, at 3.

Pursuant to the Scheduling Order, the Government's Contentions of Fact and Law and its final Witness List are due on February 9, 2007.

On January 25, 2007, the Government filed its Motion without any prior contact, not even a phone call, with counsel for Bancorp. If the Government had called it would have learned that Bancorp would have consented to a deposition of Daugherty and would have had no objection to the designation by the Government of an expert witness on the issue of a tax gross-up.

## ARGUMENT

### I. Bancorp Has Complied With Procedural Order No. 2 And The Scheduling Order.

In its Motion, the Government argues that Daugherty should not be allowed to testify because he was not disclosed "as a potential witness during the discovery period in accordance with the Court's procedural orders for the Winstar-related cases." Government's Motion at 4. The Government though does not identify any such procedural order, except for Procedural Order No. 2.

As set forth above, Bancorp did not violate the terms of Procedural Order No. 2, when it did not list Daugherty as a witness. Daugherty was not a known witness at the time. As of May 1, 1998, he was not the President of Bancorp and Bancorp was not aware that it was entitled to a tax gross-up. Even if it is assumed *arguendo* that Daugherty should have been disclosed under Procedural Order No. 2, the Government is not entitled to rely upon Procedural Order No.2 as the basis to have Daugherty excluded as a witness at trial because there is no such sanction in the Order.

The only other relevant procedural order in the case is the Scheduling Order entered on December 8, 2006. As set forth above, in all respects Bancorp has complied with the terms of that Order. At the meeting on December 27, 2006, it served its List of Initial Witnesses, in which Daugherty was disclosed as a witness to testify on the issue of a tax gross-up. Exhibit B. On January 16, 2007, it filed its Contentions of Fact and Law, in which the issue of a tax gross-up was disclosed and, at the same time, filed its List of Witnesses, in which, once again, Daugherty was disclosed as a witness to testify on the issue of a tax gross-up.

Moreover, the Government can hardly complain about any violations of any procedural orders by Bancorp, when it has committed numerous violations of the procedural orders of this Court. As

mentioned above, there were four witnesses called by the Government at the trial last June who were not disclosed in its Initial Disclosures, and there is a witness on the Government's Witness List for the trial in March that was not disclosed. As set forth in detail in Plaintiff's Post-Trial Brief and Reply to Defendant's Post-Brief, during the course of these proceedings the Government has also violated the Order entered by Judge Hodges on November 24, 1999, the Case Management Order, the August 21, 1997 Order, the Show Cause Order, the March 23, 1998 Order and the May 16, 2006 Order of this Court. Considering the multiple violations of these Orders by the Government, it is disingenuous for the Government to now insist on technical compliance with the disclosure requirements for a witness in Procedural Order No. 2.

Furthermore, during the recent proceedings in this case, the Court has ruled that a procedural order will not be enforced against a party unless there has been a showing of unfair prejudice by the other party. For instance, the Court allowed the depositions of the shareholders, their subsequent testimony at trial, and the presentation by the Government during the trial in June 2006 of the defense of a prior material breach, even though the depositions, the testimony and the presentation of the defense of a prior material breach violated the terms of the Orders listed above. Most recently, the Court even held that the defense of a prior material breach on grounds of investments in service corporations did not constitute procedural waiver, even though it was not disclosed until approximately six years after the alleged violation. See Opinion On Prior Material Breach, filed January 31, 2007, at 13. Considering the foregoing recent rulings by the Court, the Government's Motion should also be denied because, as explained below, there will be no unfair prejudice to the Government if Daugherty is allowed to testify.

## II. <u>The Government Will Not Be Unfairly Prejudiced If Daugherty Is Allowed to Testify</u>.

As mentioned above, Bancorp consents to the deposition of Daugherty at a mutually convenient time and location. Bancorp also has no objection to the designation by the Government of an expert witness on the issue of a tax gross-up. This can be done in the Government's final Witness List, which is not due until February 9, 2007.

Also, the Government has known since December 27, 2006 that Daugherty was going to testify on this issue, and has until February 9, 2007 to designate a counter witness, if it perceives the need to do so. It then has until March 19, 2007, when the trial on damages is scheduled to begin, to make any necessary preparations on this issue. As such, the Government has had ample time to designate a witness and to prepare for trial on this issue, and there is no prejudice to the Government. The assertion of unfair prejudice by the Government is especially suspect because the disclosure of Daugherty as a witness has been done in compliance with the terms of the Scheduling Order, and the time for the Government to respond thereto is set forth in the terms of the Scheduling Order - all of which the Government agreed to.

Furthermore, the issue of a tax gross-up is a very simple issue. The effective rate can be ascertained from the Federal and Maryland State Tax Code. It is even a matter that the Court could take judicial notice of. If for some reason the Government does not agree with the effective rate, then it can explain what other rate it believes should apply. There is no need for any complicated analysis or testimony.

Considering all of the foregoing, the Government has not suffered any unfair prejudice[2] from the disclosure of Daugherty and its request to have him excluded as a witness at the trial should be denied.

**III. Bancorp Could Be Severely Prejudiced If Daugherty Is Not Allowed To Testify.**

By contrast, if Daugherty is not allowed to testify, and the Court does not take judicial notice of the effective tax rate, then Bancorp will be severely prejudiced. Assuming that the effective rate of a tax gross-up for a damages award in the amount of $14,165,874 is 38.62%, then the additional loss to Bancorp is significant. Under this scenario, the additional damages to make Bancorp whole would be approximately $5,470,000. Obviously, if Bancorp were deprived of this facet of its damage claim such a loss would be very prejudicial.

## CONCLUSION

WHEREFORE, Plaintiff, First Annapolis Bancorp, Inc., respectfully requests that Defendant's Motion to Strike Plaintiff's Supplemental Expert Witness Identification be denied.

---

[2] Indeed, as Bancorp has repeatedly mentioned, if any party has suffered prejudice based on the lack of disclosures concerning damages, it is Bancorp, not the Government. To date, the Government still has not responded to Plaintiff's Motion for Entry of Partial Summary Judgment on Damages, which was filed on August 5, 1999, **over seven years ago**. Also, in its initial Exhibit List, the Government has listed another 400 trial exhibits. These are in addition to the 680 or so exhibits the Government listed on its Exhibit List for the trial last June. The Government has taken the position that it may use any of those exhibits, plus the additional 400 new exhibits, for a total of over 1,000 exhibits, for the trial on March 19, 2007. The identification by the Government of over 1,000 potential exhibits to be used during the trial in March is fundamentally unfair. The Government obviously is attempting to overwhelm Bancorp and disguise what its real exhibits are. To make matters worse, despite written request, the Government still has not produced copies of the additional 400 exhibits, most of which were never produced in discovery.

Respectfully submitted,

Dated: February 1, 2007

COOTER, MANGOLD, TOMPERT
& KARAS, L.L.P.

s/Dale A. Cooter
Dale A. Cooter
James E. Tompert
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC 20015
Tel: (202)537-0700
FAX: (202)364-3664

Attorney for Plaintiff
First Annapolis Bancorp, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of February 2007, a copy of the foregoing Opposition and Exhibits was filed electronically pursuant to the Electronic Case Filing procedures of the United States Court of Federal Claims, with service by Notice of Electronic Filing to the designated attorneys and parties of record.

s/Dale A. Cooter
Dale A. Cooter