**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FIRST ANNAPOLIS BANCORP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 94-522C** |
| **v.** | ) | **(Judge Williams)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION FOR RECONSIDERATION**

Pursuant to Rules 7, 59, and 60 of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court reconsider its opinion on prior material breach dated January 31, 2007. First Annapolis Bancorp, Inc. v. United States, – Fed. Cl. – , 2007 WL 315353 (Fed. Cl. Jan. 31, 2007) ("First Annapolis I"). Specifically, we request that the Court reconsider its decision that Bancorp's prior breach was not material in light of the opinion of the Court of Appeals for the Federal Circuit in Long Island Savings Bank, FSB v. United States, – F.3d – , 2007 WL 269433 (Fed. Cir. Feb. 1, 2007) ("Long Island"), which was issued the day after the Court's opinion in this case.

**ARGUMENT**

**I. THE COURT'S DECISION CONCERNING MATERIALITY WAS CLEARLY ERRONEOUS**

The decision to grant a motion for reconsideration is within the scope of the Court's sound discretion. Yuba Natural Resources, Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). A motion for reconsideration is appropriate if a party can show that an intervening change in the controlling law has occurred. Bishop v. United States, 26 Cl. Ct. 281, 286 (1992);

Coconut Grove Entm't, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000); 11 Charles Alan Wright, Federal Practice and Procedure § 2810.1 (2d ed. 1995).

On January 31, 2007, this Court issued an opinion finding that Bancorp had entered into a contract with the Government in conjunction with its acquisition and conversion of First Federal Savings Bank of Annapolis ("First Federal"), and that the contract was breached in December 1989, by the implementation of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). First Annapolis Bancorp, Inc. v. United States, – Fed. Cl. – , 2007 WL 314885 (Fed. Cl. Jan. 31, 2007) ("First Annapolis II"). On the same date, the Court also issued its opinion concerning our prior material breach defense, which was tried in June 2006. In its prior material breach opinion, the Court stated: "At the outset, the Court finds that Plaintiff did commit a prior breach of its contract with the Government by loaning $1.6 million to shareholders for the purpose of purchasing stock in Bancorp . . ." in contravention of applicable regulations and the representations in its Application and the Regulatory Capital Maintenance Dividend Agreement ("RCMDA"). First Annapolis I, *12. However, the Court went on to find that Bancorp's prior breach was not material.

The Court based its finding regarding materiality upon the fact that Bancorp infused $13.6 million into the thrift, which was $2.6 million more than was required. Accordingly, the Court held that, even deducting the $1.6 million in loans from the amount infused, Bancorp still infused $1 million more than was required. The Court also found that the regulators did not seek to unwind the conversion when they discovered the loans to shareholders (although Bancorp produced no evidence that this was even possible), and that we failed to prove "what actual

losses [we] suffered resulting from these loans." Id. at *14. Thus, the Court concluded that Bancorp's prior breach was not material. .

The day after the Court issued its decision, the Federal Circuit issued its decision in Long Island, reversing the trial court's award of nearly $436 million to the plaintiff in another Winstar-related case. In Long Island, the trial court granted plaintiffs' motion for summary judgment and denied our counter-claim and affirmative defenses, which were predicated upon the fact that Long Island had made certain misrepresentations regarding its compliance with all applicable laws and regulations. The trail court then conducted a damages trial, which resulted in an award of nearly $436 million to plaintiff. We appealed.

On appeal, the Federal Circuit reversed the trial court's decision on the basis of our fraud counter-claim. In doing so, it addressed testimony, similar to that elicited at trial in this case, concerning what regulators would have done if they had know of the breach. In Long Island, the Federal Circuit held that the active breaching of fiduciary duties by the Chairman of the Board and CEO (his receipt of payments from his former law firm which provided legal services to the bank) constituted "material information" when the regulators had conditioned the agreement upon a representation and warranty of compliance with the law, including regulations requiring "safe and sound management." Long Island, *14. The Federal Circuit further stated:

> Indeed, the government's supervisory agent responsible for recommending whether LISB's acquisition of Centereach should be approved in 1983 declared that "[h]ad Mr. Conway correctly and accurately revealed the nature and substance of the kickback scheme . . . I would have recommended that we discontinue discussions and negotiations with [LISB]."

Id. This is precisely the testimony that we elicited from two separate regulators at trial in this case. As this Court noted in its decision, both Greg Jones, the supervisory agent, and Park

Zimmerman, the head of FHLBB-Atlanta at the time, testified at trial that, had they known about the loans to shareholders, they would have taken steps to stop the conversion. First Annapolis I, *4, n.6., *5. However, unlike the Federal Circuit in Long Island, the Court found the testimony not probative and dismissed it as "a speculative post hoc construct." First Annapolis I, *13.

In Long Island the Federal Circuit went on to state that: "While these assertions may be true, we hold that the government need not prove that it would have declined the contract had Conway disclosed the information. Rather, the circumstances of this case indicate that the government would have considered it important in deciding whether to consummate the contract." Long Island, *14 (emphasis added). That is precisely what our witnesses testified to at trial; however, rather than focusing on this testimony – the importance of not funding their own conversion – the Court focused instead upon whether Bancorp infused more capital into the thrift than was required by the conversion agreement. Moreover, the un-rebutted evidence at trial in this case demonstrated, just as in Long Island, that "the government would have considered [the loans to shareholders] important is deciding whether to consummate the contract." Indeed, Park Zimmerman testified that he would have stopped the conversion "regardless of the amount of money that was loaned." First Annapolis I, *5 (citing Tr. 55).

If anything, the Court's finding in this case that, First Federal funded its own conversion in contravention of applicable regulations and Bancorp's representations and warranties, should be even more material than in Long Island where the Chairman and CEO of the bank was receiving kickbacks from his former law firm. In this instance, Bancorp's prior breach was directly related to the funding of the conversion – the very essence of the contract. Moreover, there was un-rebutted testimony from two regulators that they would have stopped the

conversion had they know about the impermissible loans. Thus, consistent with Federal Circuit's holding in Long Island, the Court should have credited the statements of Jones and Zimmerman and found that Bancorp's prior breach was indeed material. By focusing upon the amount of capital raised in the conversion the Court erred in holding that Bancorp's breach was not material.

The Federal Circuit's decision in Long Island makes clear, as we always have maintained, that, the funding of the conversion was a matter of vital importance to the contract and that Bancorp's breach in this regard was material. Lary v. United States Postal Serv., 472 F.3d 1363, 1367 (Fed. Cir. 2006) (citing Thomas v. Dep't of Hous. And Urban Dev., 124 F.3d 1439, 1442 (Fed. Cir. 1997)). Accordingly, the Court's finding that Bancorp's prior breach was not material to the contract should not stand in light of Long Island. Under these circumstances, reconsideration of the Court's decision in First Annapolis I is wholly appropriate.

Thus, we respectfully request that the Court reconsider its decision that Bancorp's prior breach was not material. Such reconsideration is appropriate in this case given that a finding of materiality would be a complete defense to Bancorp's claim for damages and would obviate the need for a trial next month.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court reconsider and vacate its decision in First Annapolis I concerning prior material breach in light of the Federal Circuit's decision in Long Island.

Respectfully submitted,

STUART E. SCHIFFER
Deputy Assistant Attorney General

s/Jeanne E. Davidson

JEANNE E. DAVIDSON
Acting Director

s/Richard B. Evans

RICHARD B. EVANS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-7760
Facsimile: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:
TIMOTHY ABRAHAM
MELINDA HART
MARK PITTMAN
DELISA M. SANCHEZ
Trial Attorneys

February 9, 2007

## CERTIFICATE OF FILING

I hereby certify that on February 9, 2007, a copy of the foregoing "DEFENDANT'S MOTION FOR RECONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Richard B. Evans