**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FIRST ANNAPOLIS BANCORP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 94-522C** |
| | ) | **(Judge Williams)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR RECONSIDERATION**

Plaintiff First Annapolis Bancorp, Inc. ("Bancorp"), by and through counsel, hereby opposes Defendant's Motion for Reconsideration and states as follows:

**INTRODUCTION**

In its Motion for Reconsideration, the Government contends that the Court should reconsider its Opinion on Prior Material Breach of Contract, filed on January 31, 2007, because of the opinion issued by the United States Court of Appeals for the Federal Circuit in Long Island Savings Bank, FSB v. United States, 2007 WL 269433 (Fed. Cir. Feb. 1, 2007) ("Long Island"). As explained below, the Long Island case is inapposite and cannot serve as the basis for reconsideration of the Court's Opinion on Prior Material Breach.

**ARGUMENT**

The opinion by the Federal Circuit in Long Island is inapposite for three reasons. First, in Long Island, the Government alleged an affirmative defense of a special plea in fraud, which was based upon the forfeiture provision of 28 U.S.C. §2514. Id. at 5. Section 2514 provides that:

A claim against the United States shall be forfeited to the United States by any person who

> corruptly practices or attempts to practice any fraud against the United States in the proof, statement establishment, or allowance thereof.

28 U.S.C. §2514 (2006). In Long Island, the Federal Circuit noted that, under this Section, the Government was required to establish by clear and convincing evidence that the contractor knew the claim was false and intended to defraud the government by submitting the claim. 2007 WL 269433 at *7 and *8 (citations omitted). After reviewing the record below, the Federal Circuit determined that "the government has proven its special plea in fraud by clear and convincing evidence." Id. at *14.

By contrast in this case, the Government did not allege a special plea in fraud. Indeed, by its own choice, it did not even file an answer in the case alleging any affirmative defenses. Counsel for the Government even acknowledged during closing argument at the end of the trial in June 2006 that the Government did not file a fraud counterclaim and did not obtain any authorization from the Fraud Section of the Department of Justice to allege a claim of fraud. 6/22/06 Transcript ("Tr.") at 821/10-821/14. Indeed, the Government has made no effort to comply with Rule 9(b) of the Rules of this Court, which provides that "[i]n **all averments of fraud or mistake**, the circumstances constituting fraud or mistake shall be stated with particularity." RCFC 9(b) (emphasis supplied); accord In re Newbridge Networks Securities Litigation, 962 F.Supp. 166, 170-72 (D.D.C. 1997) (interpreting Rule 9 of the Federal Rules of Civil Procedure).[1]

Moreover, during the trial in June 2006, the Government did not prove any sort of fraud by clear and convincing evidence, as required by the Federal Circuit in Long Island. See also Atraqchi v.

---

[1] Rule 9 of the Federal Rules of Civil Procedure is identical to Rule 9 of the Rules of this Court.

GUMC Unified Billing Services, 788 A.2d 559, 563 (D.C. 2002) (citations omitted) (each element of fraud must be proven by clear and convincing evidence); Redmond v. Birkel, 933 F.Supp. 1, 3 (D.D.C. 1996) (fraud is never presumed; if there is a lack of proof as to any one element, the fraud claim must fail). During the trial, the only witness to even remotely suggest fraud, was Zimmerman, who suggested that the managers of First Annapolis may have been dishonest. On cross examination, however, he was not able to identify the names of any persons he thought were dishonest and conceded that he did not have any evidence, other than what is in the documents, to support his conclusion. 6/19/06 Tr. at 125/6-126/5. As such, Zimmerman's testimony falls far short of proving any type of fraud by clear and convincing evidence. Considering the absence of any special plea of fraud, the concession by counsel for the Government, the failure to comply with Rule 9(b) and absence of any evidence of fraud, let alone clear and convincing evidence, the Government is not entitled to the protection of Section 28 U.S.C. §2514, and the decision in Long Island does not apply.

Even if the opinion in Long Island is still considered, the decision does not apply for the additional reason that the underlying facts concerning materiality in Long Island are fundamentally different from the underlying facts in this case. In Long Island, James J. Conway, Jr. ("Conway"), while he was the Chairman of the Board and CEO of Plaintiffs Long Island Savings Bank, FSB ("LISB") and Long Island Savings Bank of Centereach ("Centereach"), received compensation from his law firm Conway & Ryan, which was the "primary outside counsel" for the bank. 2007 WL 269433 at *2. The Court noted that he "personally received at least $3.5 million from the law firm," and collectively with "his daughter and daughter-in-law received at least $10.9 million from the law firm." Id. at *3. Despite "multiple opportunities, neither Conway nor LISB disclosed this compensation from the law

firm." Id. After a criminal referral, the Office of Thrift Supervision ("OTS") undertook an investigation and concluded in a Consent Order that "Conway 'engaged in violations of federal conflict-of-interest and disclosure regulations, participated in conflicts of interest constituting an unsafe or unsound practice within the meaning of 12 C.F.R. §571.7, and breached his fiduciary duty owed to LONG ISLAND SAVINGS.'" Id. at 5 (quoting the Consent Order). Although Conway did not admit nor deny the findings by the OTS, "Conway stipulated and consented to the order banning him from the thrift and banking industry requiring him to pay $1.3 million in restitution to LISB." Id. Conway also pled guilty to a criminal misdemeanor charging him with violating 18 U.S.C. §571.7," and his criminal conviction led to his disbarment. Id. Considering all of the foregoing, there was no legitimate dispute that the actions of Conway should have been imputed to the Plaintiffs and were undertaken with an intent to defraud. Id. at 10-13.

In this case, by contrast, there were no findings by the OTS of conflict-of-interest or disclosure violations, unsafe or unsound practices within the meaning of 12 C.F.R. §571.7 or a breach of fiduciary duty in conjunction with the shareholder loans used to purchase stock in Bancorp. Instead, the evidence at trial was that after the Government learned of the shareholder loans they were treated as a regulatory violation by First Annapolis Savings Bank, F.S.B. ("First Annapolis"), with an instruction to remove the shareholder loans from the books of the bank. See, e.g., DX 439 (the letter from the OTS to First Annapolis, dated April 18, 1990, confirms that the issue of shareholder loans was an issue of "supervisory concern" of a possible regulatory violation by First Annapolis, and provides that First Annapolis shall remove the shareholder loans from its books). In this regard, the Court even noted in its Opinion that William Crompton ("Crompton"), the examiner in charge of the 1990 examination and

Greg Jones ("Jones"), the Supervisory Agent, who testified "that the actual curative action in both a prior case and this case was to 'get the shareholder loans off the books.' Tr. at 750-51, 576, and 605." Opinion on Prior Material Breach at 20. Moreover, as the Court correctly found, pursuant to the contract by and between Bancorp and the Government, "Bancorp raised $3,165,874 more in capital than it was required to invest in First Annapolis," and "also exceeded the minimum amount it was required to invest in First Annapolis by $2,665,907." Id. at 3. The Court therefore reasoned that, "[d]iscounting the $1.6 million in shareholder loans, Bancorp raised over $12 million in capital, and it was only required to raise $11 million." Id. at 20. The Court also found that Bancorp had "removed $1.275 million of the $1.6 million in shareholder loans from its books in April 1989." Id. None of these factual findings have been challenged by the Government in its Motion.

Furthermore, in this case there is no evidence to impute any wrongdoing regarding the shareholder loans to Bancorp or evidence that Bancorp intended to defraud the Government. During the trial in June 2006, the Government did not present any evidence whatsoever that Bancorp was involved with any of the loans to shareholders used to purchase stock in Bancorp. None of the shareholders testified about any involvement by any representative of Bancorp with the loans they received to purchase stock in Bancorp. In this regard, Douglas Parran ("Parran") testified, without contradiction, that "I was not aware of any loans made to those individuals to purchase stock." 6/20/06 Tr. at 403/20-403/21. He further testified that he did not know of anyone else at the bank who was aware of those shareholders borrowing money to purchase stock in Bancorp. Id. at 403/23-

404/1. None of the exhibits entered into evidence[2] show any involvement whatsoever by Bancorp in the shareholder loans used to purchase stock in Bancorp. The only possible hope that the Government had to somehow prove that Bancorp was involved in the shareholder loans used to purchase stock in Bancorp was through the purported actions by Wayson, which was precluded by the Court's August 23, 2006 Opinion. Considering all of the foregoing, the evidence in this case clearly shows that there was no prior material breach of contract, which is not altered by decision in Long Island where the facts were fundamentally different.

The contention by the Government that the decision in Long Island requires this Court to give credence to the testimony by Zimmerman that, if he had known at the time that shareholder loans were used to purchase stock in Bancorp, he would have recommended stopping the conversion, is ill-founded. First of all, a careful review of the opinion in Long Island shows that the Federal Circuit did not base its decision on the testimony of the supervisory agent who testified that if he had known of Conway's wrongdoings he would have recommended that the Government discontinue the discussions and negotiations for the Assistance Agreement. 2007 WL 269433 at *14. Instead, the Court

---

[2] Indeed, the only document even referred to by the Government in this regard was the letter dated August 26, 1988 from Paul Jones. DX 183. A close review of this letter though shows it is not evidence that either Parran or Bancorp knew of the shareholder loans used to purchase stock. The letter makes no mention of shareholder loans, and in the "RE" line simply states "$275,000.00 shares of First Annapolis Bancorp Common Stock," which is ambiguous to say the least, and does not impute knowledge of shareholder loans to Parran or Bancorp. Moreover, there was no testimony that Parran even received the letter or ever saw it before. See 6/20/06 Tr. at 359/25-361/22. The letter, although it is addressed to Parran, underneath the address it is marked to the attention of, "ATTN," Cathy A. Hinckel, and, as such, in the normal course of business would have gone to her. Id. As such, the letter does not constitute evidence that Parran or Bancorp knew, or had any involvement with the shareholder loans.

reasoned that the "the circumstances of this case indicate that the government would have considered [the information] important in deciding whether to consummate the contract." Id. As discussed above, the circumstances of the case in Long Island were fundamentally different from the circumstances in this case. They were also different because in Long Island, there was an Assistance Agreement, and, as the Court stated:

> . . . the active breaching of fiduciary duties by the Chairman of the Board and the CEO constitutes material information when the government undertakes a national solicitation for potential acquirers of a declining financial institution, **contributes $75 million of cash** to the declining institution's net worth, and conditions performance on a representation and warranty of compliance with the law, including regulations requiring "safe and sound management."

Id. (emphasis supplied).

By contrast in this case, there was no evidence of any on-going active breach of fiduciary by officers or directors of Bancorp, there was no Assistance Agreement, there was no national solicitation by the Government for a potential acquirer and there was no contribution by the Government of any amount, let alone $75,000,000. Instead, in this case, the matter of vital importance or the essence of the contract by and between Bancorp and the Government was for Bancorp to raise and make a capital contribution to First Annapolis in the minimum amount of $11,000,000, which, as the Court correctly found, Bancorp clearly did, even if the shareholder loans used to purchase stock in Bancorp in the amount of $1,600,000 are considered.

Moreover, in this case, the Court expressly rejected the testimony by Zimmerman, not only because it was hypothetical, but because it was contradicted by other testimony. The assertion by the Government in its Motion that Zimmerman's testimony was "un-rebutted," is incorrect. It was rebutted in the testimony of both Crompton and Jones. In its Opinion, the Court explained that Zimmerman's

testimony "was not based on his personal experience and "was inconsistent" with the testimony by Crompton and Jones, "who said that the actual curative action in both a prior case and this case was to 'get the shareholder loans off the books.'".[3] Opinion on Prior Material Breach at 20. In this regard, the Court was not required to accept Zimmerman's testimony, but rather, as the Federal Circuit noted in Long Island, took an objective look at his testimony, and came to the appropriate conclusion that "it was a speculative post hoc construct." Id.; 2007 WL 269433 at *14.

In addition to the foregoing, the third reason why Long Island does not apply is that the opinion does not supplant the law as to what constitutes a prior material breach of contract. Indeed, the opinion does not even address the case law as to what constitutes a prior material breach of contract. See Hometown Financial, Inc. v. United States, 409 F.3d 1360, 1370 (Fed. Cir. 2005) (a breach of a contract "is material when it relates to a matter of vital importance or goes to the essence of the contract."); accord Thomas v. Dep't of Housing & Urban Development, 124 F.3d 1439,1442 (Fed. Cir. 1997) (citing 5 *Corbin on Contracts* §1104 (1964)); Lary v. U.S. Postal Services, 472 F.3d 1363, 1366 (Fed. Cir. 2006); Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604, 620-21 (2000) (the issue is whether the breach substantially deprived the non-breaching party of the benefit of the bargain it struck). The Federal Circuit in Long Island was only discussing whether or not the wrongdoings by Conway were material within the context of the special plea of

[3] Even the testimony by Jones that, if he had known of the loans, he would have raised concerns and sought to stop the conversion, was contradicted by his subsequent testimony and his letter dated April 18, 1990, that he treated the issue of shareholder loans as a regulatory violation and only sought their removal from the books of First Annapolis. 6/21/06 Tr. at 636/24 - 638/24 and 649/15-649/25; DX 439.

fraud. Within that context, it noted that, under the circumstances of the case, the Government would have considered information of the wrongdoings important in deciding whether or not to consummate the contract. 2007 WL 269433 at *14. In so doing, it did not alter in any way the foregoing case law, namely that, a breach of contract "is material when it relates to a matter of vital importance or goes to the essence of the contract" or "substantially deprived the non-breaching party of the benefit of the bargain it struck" Hometown, 409 F.3d at 1370; Mobil Oil, 530 U.S. 604, 620-21. Accordingly, the Government cannot use the opinion in Long Island as the basis to reargue its contention that any amount of shareholder loans constitutes a prior material breach. As the Court correctly reasoned in this case, under the foregoing case law, there has been no prior material breach of contract by Bancorp.

**CONCLUSION**

WHEREFORE, Plaintiff, First Annapolis Bancorp, Inc., respectfully requests that Defendant's Motion for Reconsideration be denied.

Respectfully submitted,

Dated: February 20, 2007

COOTER, MANGOLD, TOMPERT
& KARAS, L.L.P.

s/Dale A. Cooter
Dale A. Cooter
James E. Tompert
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC 20015
Tel: (202)537-0700
FAX: (202)364-3664

Attorney for Plaintiff
First Annapolis Bancorp, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of February 2007, a copy of the foregoing Opposition was filed electronically pursuant to the Electronic Case Filing procedures of the United States Court of Federal Claims, with service by Notice of Electronic Filing to the designated attorneys and parties of record.

s/Dale A. Cooter
Dale A. Cooter