IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **FIRST ANNAPOLIS BANCORP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 94-522C** |
| **v.** | ) | **(Judge Williams)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF OUR MOTION FOR RECONSIDERATION

Pursuant to Rule 7, of the Rules of the Court of Federal Claims ("RCFC"), and the Court's order dated February 12, 2007, defendant, the United States, respectfully submits this reply brief in support of our motion for reconsideration of the Court's opinion on prior material breach dated January 31, 2007. First Annapolis Bancorp, Inc. v. United States, – Fed. Cl. – , 2007 WL 315353 (Fed. Cl. Jan. 31, 2007).

## ARGUMENT

### I. As Demonstrated In Our Motion, The Court's Decision Concerning Materiality Was Clearly Erroneous

As we explained in our motion, the Court erred when it held that Bancorp's prior breach of contract was not material, in light of the Federal Circuit's holding in Long Island Savings Bank, FSB v. United States, – F.3d – , 2007 WL 269433 (Fed. Cir. Feb. 1, 2007) ("Long Island"), which was issued the day after this Court's opinion. Bancorp responds to our motion for reconsideration by raising a number of arguments, none of which are compelling.

**A. Bancorp's Response Misconstrues The Significance Of The Federal Circuit's Decision In Long Island**

Bancorp claims that the Federal Circuit's decision in Long Island, is "inapposite" because it deals with the Government's "defense of a special plea in fraud." Resp. at 1. Bancorp then goes on to discuss the requirements for pleading and proving a special plea in fraud. Resp. at 2-3. Bancorp, however, misses the point. Regardless of whether Long Island dealt with the defense of a special plea in fraud as opposed to a defense of prior material breach, the point is that the Federal Circuit in Long Island addressed the issue of materiality. It did so by asking whether knowledge of the regulatory violation in that case would have been important to the regulators at the time of the contract. Was it "material information?" The Federal Circuit in Long Island held that it was.

In reversing the trial court's decision, the Federal Circuit addressed testimony, similar to that elicited at trial in this case, concerning what regulators would have done if they had known of the breach. In Long Island, the Federal Circuit held that the Chairman of the Board and CEO's breach of fiduciary duties (his receipt of payments from his former law firm which provided legal services to the bank) constituted "material information" when the regulators had conditioned the agreement upon a representation and warranty of compliance with the law, including regulations requiring "safe and sound management." Long Island, *14 (emphasis added). The Federal Circuit further noted that the supervisory agent declared that had he known the Chairman's representations were not true, he "would have recommended that we [the FHLBB] discontinue discussions and negotiations with [LISB]." Id. Again, this testimony is identical to that which we elicited from two separate regulators at trial in this case. However, unlike the Federal Circuit in Long Island, the Court found the testimony not probative and

dismissed it as "a speculative post hoc construct." First Annapolis I, *13. This is where the Court erred.

In response, Bancorp incorrectly claims that Park Zimmerman's testimony was "rebutted" by the testimony of both Greg Jones and William Crompton. Resp. at 7-8. As this Court noted in its decision, both Mr. Jones, the supervisory agent, and Mr. Zimmerman, the head of FHLBB-Atlanta at the time, testified at trial that, had they known about the loans to shareholders, they would have taken steps to stop the conversion. First Annapolis I, *4, n.6., *5. Specifically, in response to a question as to what actions his office would have taken had he known that the thrift was loaning funds as part of funding its conversion, Mr. Zimmerman testified that "we would have taken action to stop the conversion." Tr. 55 (emphasis added). Mr. Jones later testified similarly when he stated: "I would have certainly raised concerns about it to my supervisor and sought to stop the conversion until we had a chance to resolve the issue." Tr. 578 (emphasis added).[1] The Court even reiterated Mr. Jones' testimony when it stated: "This witness – this witness's opinion said that he would have had it recommended that it [the conversion] be stopped because the regulations restricted it [loans to shareholders]." Tr. 579.

[1] Bancorp's claim that Jones' testimony was contradicted by his subsequent testimony that, when the loans to shareholders were discovered he treated them as a regulatory matter, is without foundation. Resp. at 8, n.3. Indeed, by April 1990, the regulators' options were far more limited after the conversion had taken place and after 18 months of mismanagement by First Annapolis. Moreover, Jones testified that, at the time the loans were discovered, he did not see how the conversion could be "revoked." Tr. 650. For the same reason, neither this testimony nor that of Mr. Crompton, should be construed to contradict that of Mr. Zimmerman regarding what he would have done had he known about the loans. To the extent that the Court concluded that there was a conflict between the two, we respectfully believe the Court was in error. First Annapolis, *5.

Again, this testimony, from two witnesses, was the exact type of testimony that the Federal Circuit found probative in Long Island. *14. Moreover, the Federal Circuit went on to state that: "While these assertions may be true, we hold that the government need not prove that it would have declined the contract had Conway disclosed the information. Rather, the circumstances of this case indicate that the government would have considered it important in deciding whether to consummate the contract." Long Island, *14 (emphasis added). That is precisely what our witnesses testified to at trial. Indeed, Mr. Zimmerman testified that he would have stopped the conversion "regardless of the amount of money that was loaned." First Annapolis I, *5 (citing Tr. 55). Accordingly, Bancorp cannot dispute the fact that the evidence at trial demonstrated, just as in Long Island, that "the government would have considered [the loans to shareholders] important in deciding whether to consummate the contract." Long Island, *14.

Moreover, in this case, Bancorp's prior breach directly affected the funding of the conversion – the very essence of the contract. Thus, consistent with Federal Circuit's holding in Long Island, the Court should have found that Bancorp's prior breach was material.

Instead, the Court focused upon the amount of capital raised in the conversion when determining materiality. The Court based its finding regarding materiality upon the fact that Bancorp infused $13.6 million into the thrift, which was $2.6 million more than was required. Accordingly, the Court held that, even deducting the $1.6 million in loans from the amount infused, Bancorp still infused $1 million more than was required. Id. at *14. Thus, the Court concluded that Bancorp's prior breach was not material. By this same rationale, if Bancorp had infused $11,000,001 into the thrift, one dollar more than was required, then the breach would not

be material. However, if Bancorp had only infused $10,999,999 into the thrift, one dollar less than was required, then it would indeed be material. This is not the test for materiality.

**B. Bancorp's Arguments Regarding The Law Of Materiality Are Misplaced**

Bancorp also claims that the Federal Circuit's opinion in Long Island "does not supplant the law as to what constitutes a prior material breach of contract." Resp. at 8-9. We have never claimed that it did. Indeed, the Federal Circuit's opinion in Long Island merely elaborates upon the issue of materiality. As explained above, the Federal Circuit held that the kickback scheme was "material information" that would have affected the regulators' decision as to whether to approve that acquisition in the first instance. Again, Messrs. Zimmerman and Jones testified that they would have stopped the conversion had they known of the shareholder loans.

The Federal Circuit's decision in Long Island makes clear, as we always have maintained, that the funding of the conversion "relates to a matter of vital importance or goes to the essence of the contract." Resp. at 9 (citing Hometown, 409 F.3d at 1370; Mobil Oil, 530 U.S. 604, 620-21). In this instance, the Court made a factual finding that First Federal funded its own conversion with at least $1.6 million in loans to shareholders for the purpose of purchasing stock in Bancorp. First Annapolis, *12. That is not in dispute. What is disputed is whether the impermissible loans to shareholders for the purpose of purchasing stock in Bancorp, which amounted to more than 11 percent of all stock issued in the conversion, was material to the contract.

As demonstrated above, two witnesses testified that, had they known about the loans to shareholders at the time they were made, they would have taken steps to stop the conversion.

Because the violation of this particular regulation would have led the regulators to stop the conversion, this violation was, by definition, material. See Long Island, *14.

The Federal Circuit also noted that the proper question to be answered was whether the "government would have considered it important in deciding whether to consummate the contract." Long Island, *14. Similarly, in its discussion of materiality, the Federal Circuit cited to its previous decision in Liquid Dynamics Corporation v. Vaughan Company, Inc., 449 F.3d 1209 (Fed. Cir. 2006). In Liquid Dynamics, which addressed materiality in the context of a patent case, the Federal Circuit held that the proper inquiry as to materiality was whether a reasonable patent examiner would have found certain information important to his consideration of the patent application. Id. at 1226-27. This Court should make the same inquiry in this case. Given the testimony before the Court, there can be only one correct decision – the impermissible loans to shareholders to fund the stock conversion was material.

Contrary to Bancorp's claims, such an inquiry is consistent with the Federal Circuit's decisions concerning prior material breach of contract. Indeed, the Federal Circuit's holding in Hometown Financial, Inc. v. United States, 409 F.3d 1360, 1370 (Fed. Cir. 2005), another Winstar-related case, is consistent with the court's discussions of materiality in both Long Island and Liquid Dynamics. In Hometown, the Federal Circuit did not find clear error in the trial court's holding that the plaintiff's prior breach (failure to adopt proper lending procedures) was not material because it did not go to the essence of the contract, and, as the trial court found, we did not demonstrate any actual dollar losses associated with the poorly underwritten loans. In this instance, however, there can be no denying that the funding of the conversion itself with its own money through the loans to shareholders "related to a matter of vital importance or goes to

the essence of the contract." Hometown, 409 F.3d at 1370; see also Lary v. United States Postal Serv., 472 F.3d 1363, 1367 (Fed. Cir. 2006) (citing Thomas v. Dep't of Hous. And Urban Dev., 124 F.3d 1439, 1442 (Fed. Cir. 1997)). Accordingly, in light of the Federal Circuit's decision in Long Island, the Court should reconsider and reverse its finding that Bancorp's prior breach was not material to the contract.

**C. Bancorp's Claims of Fundamental Differences Between Long Island And This Case Are Not Only Irrelevant, They Are Also Inaccurate**

Finally, Bancorp claims, albeit incorrectly, the facts in this case and those in Long Island are "fundamentally different." Resp. 7. First, Bancorp's claims of factual differences are irrelevant. In order to establish our defense of prior material breach, it was not necessary for us to prove that Bancorp had knowledge of the loans to shareholders. We were only required to demonstrate that Bancorp's representations that no loans were made to fund the conversion were false. We met that burden and, thus, the Court found that Bancorp committed a prior breach of contract. First Annapolis, *12.

Notwithstanding this lesser burden of proof, Bancorp's knowledge of the shareholder loans could be inferred from the documents and testimony admitted into evidence at trial. Indeed, the record contains loan documentation for millions of dollars of loans in the final two days before the conversion, which provide little or no detail about the various first-time borrowers or the purpose of the loans other than for an "investment." Moreover, Douglas Parran, President of both First Annapolis and Bancorp at the time, personally approved these loans with little or no documentation. Additionally, there was personal correspondence between one of the investors who received $275,000 in loans for the purchase of stock in the conversion and Mr. Parran, which demonstrated a link between the loans and the stock purchase. Further,

testimony demonstrated that Mr. Parran was present when the recipients of the impermissible loans endorsed the checks directly over to Bancorp for the purchase of stock. Tr. 229-230 (Paul Jones). This testimony directly contradicted the self-serving testimony of Mr. Parran that he was not aware of such loans and did not know of anyone else at the bank who had such knowledge. Tr. 403-404. Additionally, given his position in both First Annapolis and Bancorp, Mr. Parran's knowledge would be imputed to Bancorp.

Also, as in Long Island, there was a continuing breach in this case because at least some of the impermissible loans to shareholders remained on First Annapolis' books following the conversion. Similarly, just like the CEO in Long Island, Mr. Parran stipulated and consented to the order banning him from the thrift and banking industry and requiring him to pay $10,000 in restitution to the OTS.

Finally, Bancorp notes that we have yet to allege a special plea in fraud in this case. This is true, however, a special plea in fraud is not subject to the statute of limitations. Jana, Inc. v. United States, 34 Fed. Cl. 447, 452 (1995). Moreover, as this Court has previously held, the provisions of 28 U.S.C. § 2514 may be invoked sua sponte, where the court is faced with clear and convincing evidence of fraud. DeRochemont v. United States, 23 Cl. Ct. 87, 89 (1991). "Indeed, the forfeiture provisions represents a condition on the sovereign's waiver of immunity from suit." Id. (citing Kamen Soap Products Co. v. United States, 129 Ct. Cl. 619, 641, 124 F. Supp. 608, 620 (1954)).

Given the Federal Circuit's discussion of materiality in Long Island, reconsideration of the Court's decision in First Annapolis is wholly appropriate. Thus, we respectfully request that the Court reconsider its decision that Bancorp's prior breach was not material. Such

reconsideration is appropriate in this case given that a finding of materiality would be a complete defense to Bancorp's claim for damages and would obviate the need for a damages trial.

**CONCLUSION**

For the reasons stated above and in our motion, we respectfully request that the Court reconsider and vacate its decision in First Annapolis, and find that Bancorp's prior breach was material.

Respectfully submitted,

STUART E. SCHIFFER
Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

s/Kenneth M. Dintzer

KENNETH M. DINTZER
Assistant Director

s/Richard B. Evans

RICHARD B. EVANS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-7760
Facsimile: (202) 305-7644

OF COUNSEL:
TIMOTHY ABRAHAM
MELINDA HART
MARK PITTMAN
DELISA M. SANCHEZ
Trial Attorneys

February 23, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on February 23, 2007, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF OUR MOTION FOR RECONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Richard B. Evans