# In the United States Court of Federal Claims

**No. 94-522C**

**(Filed: March 2, 2007)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**FIRST ANNAPOLIS BANCORP, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**Winstar; Prior Material Breach; Reconsideration; Change in Law.**

Dale A. Cooter, Cooter, Mangold, Tompert & Karas, LLP, 5301 Wisconsin Avenue, N.W., Suite 500, Washington, D.C., for Plaintiff.

Richard B. Evans, Commercial Litigation Branch, Civil Division, Department of Justice, 1100 L Street, N.W., Washington, D.C., for Defendant; Timothy Abraham, Melinda Hart, Mark Pittman, James R. Whitman, Department of Justice, Civil Division, Washington, D.C., Of Counsel.

---

## OPINION AND ORDER DENYING RECONSIDERATION

---

**WILLIAMS**, Judge

This matter comes before the Court on Defendant's motion for reconsideration of the Court's opinion on prior material breach dated January 31, 2007. In that opinion, the Court concluded that Plaintiff, First Annapolis Bancorp, Inc. (Bancorp) committed a prior breach of its contract but that the breach was not material. In its motion, Defendant asks the Court to vacate its finding that Plaintiff's prior breach was not material, relying upon a decision of the United States Court of Appeals for the Federal Circuit which was issued one day after this Court's opinion on prior material breach, Long Island Savings Bank, FSB v. United States, ____ F.3d ___, 2007 WL 269433 (Fed. Cir. Feb. 1, 2007).

The Court appreciates the opportunity to analyze the impact of that decision on the instant matter. See Holland, et al. v. United States, No. 95-524C (Fed. Cl. Feb. 20, 2007) slip op. at 3, 2007 U.S. Claims LEXIS 39 at * 5 ("a motion for reconsideration 'enables a trial court to address

oversights, and the court appreciates the opportunity to do so.'") (quoting Cane Tenn., Inc. v. United States, 62 Fed. Cl. 703, 705 (2004) (internal quotation omitted). However, because Long Island addresses the concept of materiality in a wholly different context -- that of fraud and forfeiture -- and does not change the law on prior material breach of contract, reconsideration is denied.

## Discussion

Rule 59(a) of Rules of the United States Court of Federal Claims (RCFC) permits this court to grant reconsideration "to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a); see Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990) ("The decision whether to grant reconsideration lies largely within the discretion of the [trial] court.").

A motion for reconsideration should be considered with "exceptional care." Cane Tennessee, 62 Fed. Cl. at 705 (citing Carter v. United States, 207 Ct. Cl. 316, 518 F.2d 1199, 1199 (1975)). In order to prevail on reconsideration, the movant must establish a manifest error of law or mistake of fact. Id. A motion for reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court." Bishop v. United States, 26 Cl. Ct. 281, 286 (1992) (quoting Circle K Corp. v. United States, 23 Cl. Ct. 659, 664 (1991)). The following circumstances could warrant granting relief on reconsideration: (1) an intervening change in the controlling law has occurred; (2) previously unavailable evidence is now available; or (3) relief is necessary to prevent manifest injustice. Fru-Con Const. Corp. v. United States, 44 Fed. Cl. 298, 301 (1999) (citing Bishop, 26 Cl. Ct. at 286); see also Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376 (1994) (quoting Bishop, 26 Cl. Ct. at 285-86), aff'd, 39 F.3d 1198 (1994).

Long Island does not represent a change in the controlling law on prior material breach and does not warrant a reversal or vacatur of this Court's decision rejecting Defendant's prior material breach defense to prevent manifest injustice. Long Island involved an admitted criminal offense by the bank's chairman and CEO, James Conway, as well as an intentional false certification and misrepresentation by Conway imputed to the plaintiff bank which resulted in forfeiture of the bank's Winstar breach of contract claim under 28 U.S.C. § 2514.[1] Long Island, 2007 WL 269433, at *5. The focus of the Long Island Court's analysis was its interpretation of the forfeiture statute and the propriety of imputing Conway's misconduct to the bank, thus warranting a forfeiture. Id. at *9-14. Long Island did not involve prior material breach. Nonetheless, Defendant attempts to draw parallels between Long Island and the instant case by extracting a pronouncement on the concept of

---

[1] The Federal Circuit found that "by pleading guilty to violating 18 U.S.C. § 215, Conway admitted that he committed a crime by corruptly accepting $3,194, 106.87 in compensation from the law firm intending to be influenced and rewarded for 'the assignment of the LISB residential mortgage closing work to the law firm.'" Long Island, 2007 WL 269433, at *9. The Federal Circuit therefore found that Conway breached his fiduciary duties to the bank and profited personally from that breach.

materiality from Long Island. However, the materiality discussion in Long Island centered on whether Conway's misconduct constituted material information, the nondisclosue of which bolstered a showing of Conway's intent to defraud. Id. Defendant cites the testimony of two regulators in Long Island to the effect that had they known of Conway's kickback scheme, they would have recommended that contractual negotiations be discontinued. Characterizing that testimony as "precisely the testimony" elicited from regulators here -- Greg Jones and Park Zimmerman -- Defendant submits that because the Long Island Court found such testimony to indicate that "the Government would have considered the kickback scheme important in deciding whether to consummate the contract," that finding rendered the conduct in Long Island "material." Defendant's Motion for Reconsideration (Def. Mot.) at 4 (citing Long Island, 2007 WL 269433, at *14). From this, Defendant posits that because Messrs. Jones and Zimmerman in hindsight would have deemed the shareholder loans to be important in considering whether to proceed with the conversion, these shareholder loans must be material here.

There are several problems with this theory. At the outset, as a matter of law, Defendant is attempting to import a notion of materiality pertinent in the fraud/forfeiture context into a wholly different contractual context. The Government's fraud and forfeiture claims in Long Island required both a different burden of proof and different elements of proof than its prior material breach claim here. As the Long Island Court recognized:

> [t]o prevail under [§ 2514], the government is required to establish by clear and convincing evidence that the contractor knew that its submitted claims were false, and that it intended to defraud the government by submitting those claims. Glendale Fed. Bank, FSB v. United States, 239 F.3d 1374, 1379 (Fed. Cir. 2001) (quoting Commercial Contractors, Inc. v. United States, 154 F.3d 1357, 1362 (Fed. Cir. 1998)); cf. Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1042 (Fed. Cir. 1994) ('Under 28 U.S.C. § 2514, the government bears the burden of proving that the claimant (1) knew the claim was false and (2) intended to deceive the government by submitting it.').

Long Island, slip op. at 12-13; 2007 WL 269433, at *7. Further, it is well established that in the contractual context of prior material breach, "any degree of fraud is material as a matter of law." Christopher Village, L.P. v. United States, 360 F.3d 1319, 1335 (Fed. Cir. 2004). However, the Government did not allege that Bancorp committed fraud here. Nor did it seek a forfeiture.

The concept of materiality in the contractual context of prior material breach is well established in the Federal Circuit's jurisprudence and is explicated in Section 241 of the Restatement (Second) of Contracts. See, e.g., Lary v. United States Postal Service, 472 F.3d 1363, 1367-68 (Fed. Cir. 2006); Hometown Fin., Inc. v. United States, 409 F.3d 1360, 1370 (Fed. Cir. 2005); Christopher Village, 360 F.3d at 1334; Stone Forest Indus., Inc. v. United States, 973 F.2d 1548, 1552 (Fed. Cir. 1992). Indeed, as this Court noted in the decision at issue:

> A breach should be considered material when it goes to a matter of vital importance or to the essence of the contract. [Lary, 472 F.3d at 1367]; Hometown at 1370. In determining the materiality of a breach, the Court must review the totality of events and circumstances. Stone Forest Indus., Inc., v. United States, 973 F.2d 1548, 1552 (Fed. Cir. 1992) (citing Restatement (Second) of Contracts § 241 cmt.a). This flexible approach examines 'the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by the parties.' Id. at 1557; see also Malone v. United States, 849 F.2d 1441, 1445 (Fed. Cir. 1988) (citing Restatement (Second) of Contracts § 241(e) (1981).

Op. at 18.

The Circuit's decision in Long Island did not impact Federal Circuit precedent or the Restatement factors for assessing the materiality in the purely contractual context of analyzing whether a party's prior breach can be deemed material where fraud is not in play. As the Christopher Village court explicated: "[t]he contract law question is whether the appellants' established and uncontroverted breach was sufficiently material so as to justify the Government's subsequent breach." 360 F.3d at 1335. As Hometown, Stone, and the Restatement make clear, what is paramount to a materiality determination in the contractual context is the contract itself -- how it was viewed, bargained for, entered into and performed by both parties. It would be error for the Court to emphasize exclusively, as Defendant suggests, the post hoc view of contract formation now espoused by a former and current regulator and to make those one-sided, undocumented views dispositive of materiality in this contractual setting.[2]

---

[2] Purporting to rely on Long Island, Defendant takes issue with the Court's credibility determinations and argues that "the Court should have credited the statements of Jones and Zimmerman and found that Bancorp's prior breach was material." Def. Mot. at 5. This argument ignores that the trial court as a finder of fact, credits testimony based upon the demeanor of the witnesses. The Court found the regulators' testimony about actual remedial conduct far more probative than what a former regulator years later said he would have done in hindsight. The Court discounted that testimony as a "speculative post hoc construct." In assessing the testimony of this witness, the Court explained:

> This former regulator's testimony was not based on his personal experience and was inconsistent with the testimony of a current 25-year veteran of the FHLBB/OTS and the examiner in charge of First Annapolis' 1990 examination, -- William Crompton, and the FHLBB's Supervisory Agent, Greg Jones, who said that the actual curative action in both a prior case and this case was to 'get the shareholder loans off the books.' Tr. at 750-51, 576, and 605. (citation omitted).

In the same vein, Defendant places undue emphasis on the views of the regulators in Long Island as though their views were crucial in rendering the bank CEO's admitted criminal conduct -- his receipt of over $3 million in kickbacks -- a factor which was material in the context of assessing whether he had an intent to defraud the Government. At most, the views of the regulators in Long Island were an additional underpinning for the Court's finding of intent to defraud by bolstering the conclusion that Conway's kickback scheme would have been material information bearing on his intent. The language in Long Island on which Defendant relies is:

> Moreover, the active breaching of fiduciary duties by the Chairman of the Board and the CEO constitutes material information when the government undertakes a national solicitation for potential acquirers of a declining financial institution, contributes $75 million of cash to the declining institution's net worth, and conditions performance on a representation and warranty of compliance with the law, including regulations requiring 'safe and sound management.' Indeed, the government's supervisory agent responsible for recommending whether LISB's acquisition of Centereach should be approved in 1983 declared that '[h]ad Mr. Conway correctly and accurately revealed the nature and substance of the kickback scheme . . . I would have recommended that we discontinue discussions and negotiations with [LISB].' While these assertions may be true, we hold that the government need not prove that it would have declined the contract had Conway disclosed the information. Rather, the circumstances of this case indicate that the government would have considered it important in deciding whether to consummate the contract. Cf. Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1227 (Fed. Cir. 2006) (stating in inequitable conduct patent context: 'Our inquiry into materiality is an objective one. Materiality is not limited to prior art but embraces any information that a reasonable examiner would be substantially likely to consider important in deciding whether to allow an application to issue as a patent.' (citations omitted)).

Long Island, slip op. at 25; 2007 WL 269433, at *14.[3]

---

Op. at 20.

[3] Long Island's citation to Liquid Dynamics is telling -- it further indicates that the Federal Circuit's discussion of materiality focused on the requisite intent. As the Court in Liquid Dynamics stated:

> In order to establish inequitable conduct, Vaughan must present clear and convincing evidence that the investors 'failed to disclose material

Here, there was no criminal conduct, no "active breach of fiduciary duties" and no contribution of cash, let alone $75 million by the Government. In Long Island, Conway's active breach of fiduciary duties was deemed to be material information in the context of determining whether Conway had an intent to defraud, a necessary element of the Government's proving its special plea in fraud by clear and convincing evidence.[4] Long Island, slip op. at 23-27; 2007 WL 269433, at *13-15. In contrast, here the Government has not attempted to prove intent to defraud and has not demonstrated that the loans, while a regulatory violation, were "material" either in the Long Island sense of intent to defraud or in this contractual context.

Finally, Defendant argues that, if anything, the Court's "finding" "that First Federal funded its own conversion in contravention of applicable regulations and Bancorp's representations and warranties, should be even more material than in Long Island where the Chairman and CEO of the bank was receiving kickbacks from his former law firm, because Bancorp's prior material breach was directly related to the funding of the conversion." Def. Mot. at 4. Defendant misconstrues the Court's "finding" here. The Court did not broadly find that First Federal funded its own conversion with illegal shareholder loans. Rather, the Court found that casting aside the proceeds from the illegal shareholder loans, First Federal secured sufficient funding for the conversion with unfettered funds. The proceeds from the shareholder loans were "gravy" -- additional capital over and above that needed for the conversion -- neither a matter of vital importance nor essential to this contract. While the shareholder loans were a regulatory violation, they were a regulatory violation capable of being remedied by removing such loans from the institution's books and obtaining capital elsewhere. The Government has not shown that the shareholder loans so impacted the essence of the parties' bargain that they must preclude Bancorp from recovering for the Government's subsequent breach.

## Conclusion

Defendant' motion for reconsideration is **DENIED.**

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

> information with an intent to mislead the PTO.' (quoting Bristol-Myers Squibb Co, 326 F.3d at 1233-34.

449 F.3d at 1226.

[4] Indeed, the discussion of materiality in Long Island appeared under the heading "Intent to Defraud." Long Island, slip op. at 23-27; 2007 WL 269433, at *13-15.