**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 94-522C**
**(Judge Williams)**

---

**FIRST ANNAPOLIS BANCORP, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# PLAINTIFF'S SUPPLEMENTAL POST-TRIAL BRIEF

---

**Dale A. Cooter**
**James E. Tompert**
**COOTER, MANGOLD, TOMPERT & KARAS, L.L.P**
**5301 Wisconsin Avenue, N.W.**
**Suite 500**
**Washington, D.C. 20015**
**(202) 537-0700**

**Attorneys for Plaintiff**
**First Annapolis Bancorp, Inc.**

**Dated: August 24, 2007**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Home Liquidating Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Factual Similarities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

FEDERAL CASES

Admiral Financial Corp. v. United States, 378 F.3d 1336 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . 11

Amber Resources Co. v. United States, 73 Fed.Cl. 738 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Caroline Hunt Trust Estate v. United States, 65 Fed. Cl. 271 (2005), aff'd in part, rev'd in part, Caroline Hunt Trust v. United States, 470 F.3d 1044 (Fed. Cir. 2006). . . . . . . . . . . . 9-10

Caroline Hunt Trust v. United States, 470 F.3d 1044 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . 14

First Annapolis v. United States, 75 Fed. Cl. 280 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hansen Bancorp, Inc. v. United States, 367 F.3d 1297 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . 9, 11

Home Savings of America v. United States, 399 F.3d 1356 (Fed. Cir. 2005) . . . . . . 21, 22, 23, 24

Landmark Land Co., Inc. v. FDIC, 256 F.3d 1365 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . 5-6, 13

Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1 Home Liquidating Trust v. United States, 76 Fed. Cl. 731 (2007) . . . . . . . . . . . . . . . . . *passim*

United States v. Winstar Corp, 518 U.S. 839 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Westfed Holdings , Inc. v. United States, 407 F.3d 1352 (Fed. Cir. 2005) . . . . . . . . . . . . . . 14, 15

FEDERAL REGULATIONS

12 C.F.R. §563b.26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

TREATISES

Restatement (Second) of Contracts §243 (1979)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Restatement (Second) of Contracts §373(1979)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FIRST ANNAPOLIS BANCORP, INC.,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **No. 94-522C** |
| | **)** | **(Judge Williams)** |
| **THE UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

**PLAINTIFF'S SUPPLEMENTAL POST-TRIAL BRIEF**

Plaintiff, First Annapolis Bancorp, Inc. ("Bancorp"), by and through counsel, pursuant to the request of the Court on August 3, 2007, hereby submits this Supplemental Post-Trial Brief, and states as follows:

**INTRODUCTION**

At the conclusion of closing argument before the Court on August 3, 2007 after the trial on damages, the Court asked the parties to submit Supplemental Briefs on the recent decision by this Court in 1 Home Liquidating Trust v. United States, 76 Fed. Cl. 731 (2007) (J. Smith). As explained below, a review of the case confirms that Bancorp is entitled to an award of restitution damages. There are significant similarities between the facts in Home Liquidating Trust and the facts in this case. Because of these factual similarities, the Court should apply the law in the same manner in which it did in Home Liquidating Trust and the Supreme Court did in Mobil Oil, the case upon which the Court in Home Liquidating Trust primarily relied. In so doing, as explained below, the Court should reject the contention by the Government in this case that the burden is on Bancorp to prove, but for the enactment of FIRREA, First Annapolis would have been a viable entity, and hold that Bancorp is entitled to an award of restitution damages in the amount of $13,665,907, plus a tax-gross-up, without any offset.

## BACKGROUND

**I. Home Liquidating Trust.**

1 Home Federal Savings and Loan Association of the Carolinas ("1 Home") was a federally chartered mutual savings and loan association located in North Carolina which "was affected adversely by the 'thrift crisis' of the early eighties." Id. at 734. By the end of 1984, 1 Home had regulatory capital of $31.5 million calculated on a RAP basis and negative regulatory capital of $36.7 million calculated on a GAPP basis. Id.[1]

"To avoid insolvency, 1 Home discussed converting from a federally chartered mutual savings and loans to a federally-chartered stock savings and loan." Id. at 734. On July 23, 1985, 1 Home submitted An Application for a Voluntary Supervisory Conversion to the FHLBB. Id. at 734-35. "As part of the application, the investors proposed to purchase all of the newly converted stock, worth about $30 million." Id. at 735. This "capital infusion was designed to provide the bank with enough capital to remain solvent." Id. In its Application, 1 Home requested two regulatory forebearances, "without which the bank would have become immediately insolvent." Id. First, 1 Home sought a promise by the FHLBB not to enforce minimum regulatory capital requirements for a period of five years. Id. Second, 1 Home sought a regulatory forbearance to use the purchase method of accounting to count "supervisory goodwill," or the amount of liabilities over capital at the time of conversion, as an intangible

---

1 At the time, the FHLBB permitted thrifts to report capital compliance on a RAP basis, which was more favorable to the calculation of capital than on a GAPP basis. Id. at n.3; United States v. Winstar Corp, 518 U.S. 839, 845-46 (1996). The $60 million dollar difference between the two capital calculations "was due to losses on loan sales that could be deferred and amortized under RAP, but had to be recognized immediately under GAAP." Home Liquidating Trust, 76 Fed. Cl. at 734, n.4.

asset in the calculation of regulatory capital. Id. 1 Home submitted a business with its Application, which set forth a three-year plan "to make the bank profitable." Id. The Plan anticipated that supervisory goodwill "would offset 1 Home's negative net worth and bring the thrift into regulatory capital compliance after the infusion of $30 million dollars by investors." Id.

On December 26, 1985, the FHLBB adopted a Resolution that approved the conversion. Id. On December 27, 1986, the FHLBB issued a forbearance letter that granted a three-year forbearance from minimum regulatory capital requirements, rather than the five years requested by 1 Home. Id.

On October 31, 1986, 1 Home converted from a mutual savings and loan association to a stock savings and loan association "and sold all of its stock to investors for a total cash infusion of $32.5 million thereby generating the capital contribution." Id. at 741. After the conversion, 1 Home sustained significant losses and eventually was liquidated. Id. at 774.

In its opinion, the Court determined that there was a contract between 1 Home and the Government, which was formed when 1 Home accepted the counteroffer in the December 27, 1998 forbearance letter for a three-year forbearance from minimum regulatory capital requirements, by its conduct. Id. at 741-42. The Court also determined that there was consideration for the contract and in so doing stated that "[w]ithout the conversion and subsequent infusion, the parties were well aware that it was all but certain that 1 Home would collapse." Id. at 742.

The Court also addressed the argument by the Government that the plaintiffs, as investors in 1 Home, lacked standing to seek restitution. Id. at 743 The Court held that the investors have

standing, and, in so doing, emphasized that, in a Winstar case, investors in a failed thrift are entitled to restitution. Id. Judge Smith explained: "The Winstar-related cases clearly have held that thrift plaintiffs are not entitled to restitution based on the liabilities assumed in the transaction but that **investors of failed thrifts are entitled to money-back restitution**." Id. (emphasis supplied).

The Court then discussed the contention by the Government that "Plaintiffs are not entitled to restitutionary recovery because they failed to prove that the Government caused their damages." Id. The Government argued that "FIRREA had little, if any effect upon 1 Home's regulatory compliance with the FHLBB regulations," and therefore it is not liable for damages. Id. Plaintiffs argued that under Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604 (2000), restitution "is available even where the breach 'caused [plaintiff] no damage.'" Id. (quoting Mobil Oil, 530 U.S. at 623).

In his consideration of this issue, Judge Smith reviewed the decision by the United States Supreme Court in Mobil Oil. Id. The Court noted that "the Supreme Court found that"(1) "'the oil companies gave the United States $156 million in return for a contractual promise to follow the terms of pre-existing statutes and regulations,'" (2) "'[t]he new statute prevented the Government from keeping that promise,'" and (3) "the breach 'substantially impair[ed] the value of the contract[s].'" Id. (quoting Mobil Oil, 530 U.S. at 624) (citing Restatement (2d) of Contracts §243 (1979)). Consistent with these findings by the Supreme Court in Mobil Oil, the Court then determined that the breach of the contract by and between the Government and the investors in 1 Home, "substantially impaired the value of the contract." Id. The Court reasoned, based on Mobil Oil, that FIRREA prevented the Government from keeping its promise to 1

Home for a regulatory forbearance from compliance with minimum capital requirements. Id.; Mobil Oil, 530 U.S. at 624. The Court also noted that this conclusion is supported by the Supreme Court's decision in Winstar, "[i]ndeed the Supreme Court has held in Winstar that FIRREA 'repudiated' thrift contracts for the regulatory treatment of goodwill." 76 Fed. Cl. at 743 (citing Winstar, 518 U.S. at 870). The Court explained that "because of the breach, 1 Home was required to deduct $17 million immediately from its tangible capital," and "[b]ut for the breach, 1 Home would have been stronger by $17 million, which, at the very least, would have lessened the impact of 1 Home losses on its capital." Id. at 734-44. The Court therefore rejected "the Government's argument that its breach was not 'material' because it had no effect on 1 Home's ability to meet its capital requirements," and, relying on Mobil Oil found "that the breach was substantial, as the breach deprived 1 Home of the benefit of its bargain." Id. at 744. The Court therefore concluded that the investors in 1 Home or their successors, "are entitled to their $32.5 million back." Id.

Finally, the Court considered the argument by the Government "that if Plaintiffs are entitled to any money-back restitution, this amount must be offset by any benefits the Plaintiffs received from the contract." Id. The Court disagreed and noted that "[n]ot unlike Landmark Land Co., Inc. v. FDIC, 256 F.3d 1365, 1373 (Fed. Cir. 2001), the benefits cited by the Government are not benefits the Government provided under the contract." Id. The Court recognized that in Landmark, "the plaintiffs were entitled to money-back restitution in the entire amount of their initial contribution without offset because the '[d]efendant did not establish that any of the benefits that plaintiffs obtained in the form of dividends . . . could be attributed to the Government.'" Id; Landmark, 256 F.3d at 1373. The Court determined "because the

Government has not established any benefits that Plaintiffs obtained that can be attributed to the Government, the Plaintiffs are entitled to the return of their entire investment of $32.5 million without offsets." Id.

**II. Factual Similarities**

A review of the foregoing reveals that the relevant facts in this case are remarkably similar to those in Home Liquidating Trust. For instance, First Federal Savings and Loan Association of Annapolis ("First Federal"), like 1 Home, was a federally chartered mutual savings and loan association which was affected adversely by the thrift crisis of the early eighties. By March 31, 1998, First Federal had a $68 million dollar deficit in retained earnings. JX 89 at 0070. To avoid insolvency, First Federal sought to convert from a mutual savings and loan association to a stock savings bank, by way of merger into a new entity, First Annapolis Savings Bank, F.S.B ("First Annapolis"). PX 8. In furtherance thereof, First Federal submitted An Application for a Voluntary Supervisory Conversion to the FHLBB. JX 83. In conjunction with that Application, Bancorp proposed to purchase all of the stock of First Annapolis to make a capital infusion in the minimum amount of $11,000,000. JX 2 at 007927; JX 83; PX 8. As part of the conversion, and as set forth in Plaintiff's Post-Trial Brief, Bancorp sought three regulatory forbearances from the Government, namely, (1) a regulatory forbearance so that supervisory goodwill could be included as an intangible asset in the calculation of regulatory capital ("goodwill forbearance"); (2) a regulatory forbearance so that First Annapolis could meet its minimum capital requirements by complying with a series of annual capital benchmarks set forth in its business plan for a period of five years ("capital ratio forbearance"), and (3) a regulatory forbearance to exceed the limitation on investments in service corporations.

Bancorp submitted a business plan with its Application, which set forth a plan to make the bank profitable. PX 8. The Plan anticipated that supervisory goodwill would offset First Annapolis' negative net worth and set forth annual capital benchmarks for First Annapolis after the conversion. Id.

On, July 21, 1988, the FHLBB issued two Resolutions that approved the conversion. PX 1 and PX 2. On July 21, 1988, the FHLBB issued a forbearance letter that outlined the goodwill and capital ratio forbearances. PX 3.

On August 13, 1988, First Federal converted from a mutual savings and loan association to a stock savings bank savings and merged into First Annapolis. Bancorp purchased all of the stock of First Annapolis and thereby made a total capital contribution of $13,665,907. Without the conversion and capital infusion, the Government was well aware that it was likely that First Annapolis would not survive. PX 2 at 00718 After the conversion, First Annapolis sustained losses and on June 1, 1990 the Resolution Trust Corporation took possession of the bank.

## ARGUMENT

Because of the foregoing factual similarities, the Court should apply the law in the same manner in which it did in Home Liquidating Trust. First of all, as the Court did in Home Liquidating Trust, it should reaffirm the holding in Winstar cases that investors in a failed thrift are entitled to restitution. Home Liquidating Trust, 76 Fed. Cl. at 743. Consistent with those cases, in its claim for restitution damages, Bancorp, as an investor in First Annapolis, a failed thrift, is not seeking restitution based on the liabilities it assumed in the transaction, but instead is merely seeking to get its money back.

The Court should then reject the assertion by the Government in this case that the

burden is on Bancorp to prove that, but for the enactment of FIRREA, First Annapolis would have been viable at the time of the breach. As the Government asserted in its Post-Trial Brief, "Bancorp failed to establish that the breach 'substantially impair[ed] the value of the contract,' because it did not prove that First Annapolis was viable at the time of the breach." Defendant's Initial Post-Trial Brief, filed June 4, 2007, at 29.[2] Although stated differently, this assertion is essentially the same as the contention by the Government in Home Liquidating Trust, which was that the Plaintiffs are not entitled to restitution "because they failed to prove that the Government caused their damages." Home Liquidating Trust, 76 Fed. Cl. at 743. Stated either way, the Government argues that the burden is on the plaintiff to prove causation - either that the plaintiff must prove, but for the enactment of FIRREA, the bank would have been viable, or that the enactment of FIRREA caused the damages alleged by the plaintiff. Nowhere in Mobil Oil or 1 Home Liquidating Trust did either the Supreme Court or this Court hold that the burden is on a plaintiff to prove causation. Instead, in Mobil Oil, the Supreme Court found that because the Government's total breach of the contracts amounted to a repudiation, the "law entitle[d] the [plaintiffs] to that restitution whether the contracts would, or would not, ultimately have produced a financial gain or lead them to obtain a definite right to explore." Mobil Oil, 530 U.S. at 623-24 (and thereafter recited its lottery ticket analogy). Likewise, Judge Smith in Home Liquidating Trust expressly rejected the contention by the Government that the Plaintiffs are not entitled to restitution because they failed to prove causation. Home Liquidating Trust,

---

2 Also, in response to a question from the Court during closing argument, counsel for the Government took the position that Bancorp was required to prove as an element of its claim for restitution that, but for the enactment of FIRREA, First Annapolis would have been viable at the time of the breach.

76 Fed. Cl. at 743.

This result is also supported by the decisions in Hansen Bancorp, Amber II and Caroline Hunt. In Hansen Bancorp the Federal Circuit explained that "causation is not an element of restitution" because "restitution is available only if the breaching party's conduct amounts to a *total* breach of its contractual duties." Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1305 (Fed.Cir.2004). In Amber Resources Co. v. United States, 73 Fed.Cl. 738, 745 (2006) ("Amber II") the Court, like Mobil Oil, found that an inquiry as to how the plaintiff may have ultimately fared had the contract been fully performed is immaterial. The Court stated: "As Professor Kull explains, rescission is not concerned with inquiries into the profitability of the now-cancelled contract. [citation omitted]. The possibility that the injured party may benefit from the breach by being spared performance of a losing contract is accepted and immaterial." Id. The Court further stated: "It is our view that in a rescission context, the government has no standing to make a 'windfall'[3] argument. Unlike the reliance remedy, rescission leaves room for the possibility that the injured party will benefit from the breach. **In this case, one of the two parties will be left with the windfall. In our view there is no reason it should be the party in breach**." Id. at 747 (emphasis supplied) (footnote added).

In Caroline Hunt, the Court determined that there was a total breach and noted "[i]n so concluding, the court is mindful of the Supreme Court's direction that materiality is determined regardless of whether or not the venture would have been profitable. Mobil Oil is definitive on this point." Caroline Hunt Trust Estate v. United States, 65 Fed. Cl. 271, 315 n.55 (2005), aff'd

[3] The Court's use of the term windfall appears to refer to windfall in the sense of the windfall that a party seeking reliance damages might obtain if the venture ultimately failed.

in part, rev'd in part on other grounds, Caroline Hunt Trust v. United States, 470 F.3d 1044 (Fed. Cir. 2006). Considering the foregoing, it is well established that Bancorp is not required to prove causation, or in this case, that, but for the enactment of FIRREA, First Annapolis would have been viable.

Instead, the proper analysis, as set forth in Mobil Oil and confirmed in Home Liquidating Trust, is whether: (1) plaintiff made an investment "in return for a contractual promise" by the Government to follow or exempt the terms of a statute or regulation, (2) "[t]he new statute prevented the Government from keeping its promise," and (3) "the breach 'substantially impair[ed] the value of the contract[s].'" Id. (quoting Mobil Oil, 530 U.S. at 624) (citing Restatement (Second) of Contracts §243 (1979)).

Bancorp has proved that all three of these factors were satisfied. First, Bancorp made an investment in return for a contractual promise by the Government, which includes the regulatory forebearances. See Parran 3/19/07 Tr. at 1045; Daugherty y 3/22/07 Tr. at 1587; see also First Annapolis v. United States, 75 Fed. Cl. 280, 282 (2007). Second, FIRREA prevented the Government from keeping its promise. See Jones 3/23/07 Tr. at 1805-06 (FIRREA took away each and every forbearance); Parran 3/19/07 Tr. at 1046 (FIRREA took away all of the forbearances; the Bank did not "keep one item, not a hint of one item"); Kennedy 3/28/07 Tr. at 2330 (as a result of FIRREA, the government took away all of the forbearances); Heiden 3/21/07 Tr. at 1448, 1556-57; Heiden 3/22/07 Tr. at 1533, 1534. Third, the breach substantially impaired the value of the contract. As Douglas A. Parran ("Parran") testified, the passage of FIRREA "completely and totally broke the contract" by and between Bancorp and the Government. 3/19/07 Tr. at 1045-46. At trial, Parran, Gregory B. Jones ("Jones") and

David A. Kennedy ("Kennedy") all testified that FIRREA completely took away the three regulatory forebearances of the contract, namely, the goodwill the capital ratio and the investment in service corporations forbearances. Parran 3/19/07 Tr. at 1046; Jones 3/23/07 Tr. at 1805-06; Kennedy 3/28/07 Tr. at 2330. These "forbearances were the heart and soul of the operation of Bancorp." Heiden 3/21/07 Tr. at 1558; see also 3/21/07 at 1430 (same); DX 406 (2/27/90 letter from John E. Ryan to the First Annapolis Board of Directors and its attached Consent Agreement (subjecting Bank to restrictions on activities); Parran 3/19/07 Tr. at 1074-75 (under restrictions of letter, Bank would not sell, refinance, extend, modify, purchase, invest in, letters of credit; except for making single-family loans, the Bank's management had to now obtain permission for any growth activity).

Even if the third factor is couched in terms of a total breach, the result is the same. Indeed, the parties seem to be in agreement that a "'total breach' is a breach that 'so substantially impairs the value of the contract to the injured party at the time of the breach that it is just in the circumstances to allow him to recover damages based on all his remaining rights to performance.'" Mobil Oil, 530 U.S. at 608 (quoting Restatement (Second) of Contracts, §373 (1979)); accord Amber Resources, 68 Fed. Cl. at 548 ("[t]o constitute a total breach, the government must have substantially impaired the value of the leases); Admiral Financial Corp. v. United States, 378 F.3d 1336, 1344-45 (Fed. Cir. 2004) (citing Mobil Oil to describe "total breach" as one which so "substantially impairs" the value of the contract at the time of breach that it is just to allow the injured party to recover); Hansen Bancorp, 367 F.3d at 1309, 1312 (quoting the Restatement (Second) of Contracts §243(4), definition of "total breach" as one that "'so substantially impairs the value of the contract to the injured party at the time of the breach

that it is just in the circumstances to allow him to recover damages based on all his remaining rights to performance"); Government's Post-Trial Brief at 28 (citing Admiral, 378 F.3d at 1344-45) (citing Mobil Oil).

Just as the Supreme Court held in Mobil Oil and like this Court did in Home Liquidating Trust, based on the facts presented during the trial on damages, this Court should determine that the breach of the contract by and between the Government and Bancorp, "substantially impaired the value of the contract at the time of the breach that it is just in the circumstances to allow [Bancorp] to recover damages based on all his remaining rights to performance." Mobil Oil, 530 U.S. at 608. As set forth above, FIRREA completely took away the three regulatory forebearances that were the benefit of the bargain for First Annapolis. Moreover, it is just in the circumstances of this case to allow Bancorp to recover damages based on all its remaining rights to performance because the breach occurred, at the very latest by December 7, 1989, which was a little over a year into what was supposed to be a five-year contract. As such, First Annapolis barely had a chance to perform under the contract and demonstrate that after the five years it would have been a viable entity. The importance of the five-year term to Bancorp was well established at trial. See, e.g., Heiden 3/21/07 Tr. at 1431-32; Heiden 3/22/07 Tr. at 1447; Cook 3/19/07 Tr. at 960, 974-75, 1024; Parran Tr. at 3/19/07 Tr. at 1065; Jones 3/23/07 Tr. at 1805; Kennedy 3/28/07 Tr. at 2338. As David Cook testified, with the five-year time schedule to which the Government had agreed, First Annapolis would gain complete regulatory compliance and could have survived. Cook 3/19/07 Tr. at 960, 1029. He explained that the infusion of the $13 million and the Government's commitment to give First Annapolis five years to meet its regulatory capital requirements provided a rescue plan to cure the Bank's

problems. Cook 3/19/07 Tr. at 1024; accord Parran 3/19/07 Tr. at 1064, 1079, 1125; Parran 3/20/07 Tr. at 1296; Heiden 3/22/07 Tr. at 1477-78,1543. It is also just in the circumstances of this case to allow Bancorp to recover damages based on all its remaining rights to performance because at no time during the course of contract performance, did the Government ever determine that First Annapolis was not a viable entity or revoke the determination it made under 12 C.F.R. §563b.26 that it would be a viable entity. Jones 3/23/07 Tr. at 1803; Kennedy 3/28/07 Tr. at 2305-06. Indeed, the Government never even took any enforcement action during that period of time. Kennedy 3/28/07 Tr. at 2305-06. Likewise, the Government did not give any notice to Bancorp pursuant to the default provision in the Regulatory Capital Maintenance/Dividend Agreement, or otherwise, that it was no longer a viable entity, and then **seventeen years later**, on December 27, 2006, at the joint meeting of counsel pursuant to paragraph 13 of Appendix A of the Rules of this Court, disclosed, for the first time, its defense that Bancorp is not entitled to restitution because an award of such damages would constitute a "windfall" to Bancorp. As such, the Government should be held accountable for its breach of contract and this Court should award Bancorp $13,665,907 in restitution damages, plus a tax-gross-up,

Finally, the decision by the Court in Home Liquidating Trust at the very end of its opinion that there should not be any offset to the damage award is also helpful. Home Liquidating Trust, 76 Fed. Cl. at 744. The Court emphasized that, as in Landmark Land Co., Inc. v.. FDIC, 256 F.3d 1365, 1373 (Fed. Cir. 2001), "the benefits cited by the Government are not benefits the Government provided under the contract," and concluded "because the Government has not established any benefits that Plaintiffs obtained that can be attributed to the

Government, the Plaintiffs are entitled to the return of their entire investment of $32.5 million without offsets." Id. Similarly, in this case, the Government did not establish that it is entitled to any offsets to the investment made by Bancorp. In this regard, it is the Government's burden to prove with reasonable certainty the quantum of benefit retained by Bancorp. Caroline Hunt Trust v. United States, 470 F.3d 1044, 1052 (Fed. Cir. 2006); accord Westfed Holdings, Inc. v. United States, 407 F.3d 1352, 1370 (Fed. Cir. 2005) ("it was the government's burden to prove with reasonable certainty the quantum of benefit retained by Westfed"). In this case, the Government did not present any evidence of the quantum of any benefit Bancorp obtained that can be attributed to the Government. Indeed, this was even confirmed by counsel for the Government during the closing argument herein. In fact, as both Parran and Kennedy testified, other than the regulatory forbearances, the Government did not give any other consideration or anything of value to Bancorp. Kennedy 3/28/07 Tr. at 2330; Parran 3/19/07 Tr. at 1044, 1045. Accordingly, the Government is not entitled to any offset.

The fact in Home Liquidating Trust, that 1 Home self-liquidated does not change this result. In this case, even though First Annapolis was liquidated by the Government, during the trial on damages the Government did not prove with reasonable certainty the quantum of any benefit retained by Bancorp. The reference by the Government in its Post-Trial Brief to the "Goodwill Financial Reporting Package," as evidence that the FDIC had incurred a $103.3 million loss on the liquidation of First Annapolis is not sufficient. First of all, this exhibit was never entered into evidence during the trial in March. The Government's contention that the exhibit should be considered because it was admitted during the prior trial on shareholder loans is disingenuous. As counsel for the Government well knows, Bancorp expressly refused to

stipulate to the admissibility of any exhibit that was previously admitted during the trial on shareholder loans. Moreover, even during that trial the exhibit was admitted, but only for a very limited and different purpose. It was also subject to the objection of relevance by counsel for Bancorp. As such, this exhibit should not now be considered by the Court. Furthermore, even if the exhibit is considered by the Court, it does not establish the value of any benefits retained by Bancorp. Accordingly, the Government has not sustained its burden to prove with reasonable certainty the amount of any benefit retained by Bancorp. Westfed Holdings, 407 F.3d at 1370-71 ("We find no clear error in the trial court's factual determination that the government failed to sustain its burden in showing that any offset from the damage award is appropriate").

**CONCLUSION**

For all the foregoing reasons, and for the reasons set forth in Plaintiff's Post-Trial Brief and Reply Brief, First Annapolis Bancorp, Inc. respectfully requests the Court to find in its favor and award damages in the amount of $22,606,959.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
& KARAS, L.L.P.

s/Dale A. Cooter
Dale A. Cooter, Esq,
James E. Tompert, Esq.
5301 Wisconsin Avenue, NW, Suite 500
Washington, D.C. 20015
Tel: (202) 537-0700
Facsimile: (202)364-3664

*Attorneys for Plaintiff*
*First Annapolis Bancorp, Inc.*

August 24, 2007

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of August 2007, a copy of the foregoing PLAINTIFF'S SUPPLEMENTAL POST-TRIAL BRIEF was filed electronically pursuant to the Electronic Case Filing procedures of the United States Court of Federal Claims, with service by Notice of Electronic Filing to the designated attorneys and parties of record.

s/Dale A. Cooter
Dale A. Cooter