**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **FIRST ANNAPOLIS BANCORP, INC.,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **No. 94-522C** |
| | **)** | **(Judge Williams)** |
| **THE UNITED STATES,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING**
**AMBER RESOURCES CO. V. U.S.**

Pursuant to the Court's August 28, 2008 Order, inviting additional briefing on the impact of the Federal Circuit's recent decision in Amber Resources Co. v. United States, --- F.3d ----, 2008 WL 3891567 (Fed.Cir. Aug 25, 2008) (NO. 2007-5047, 2007-5082)("Amber Resources"), Plaintiff First Annapolis Bancorp, Inc. hereby submits this additional memorandum in further support of its claim for restitution.

First Annapolis respectfully submits that the Federal Circuit's decision in Amber Resources, affirming the trial court's decisions on liability and damages, leaves no doubt that an award of restitution to First Annapolis is mandated. In Amber Resources Co. v. United States, 68 Fed.Cl. 535, 560 (Fed.Cl.,2005)("Amber I"), the United States Court of Federal Claims found that the 1990 amendments to the Coastal Zone Management Act ("CMZA"), 16 U.S.C. § 1451 *et seq*. constituted a repudiation of certain oil leases awarded for the exploration and development of oil and gas resources off the California coast.[1] In awarding over $1 billion in restitution, the

[1] The Federal Circuit found that a series of events involving a subsequent federal court injunction and government action in response to the injunction constituted the repudiation of the leases, not the CMZA amendments *per se*. Amber Resources, 2008 WL 3891567, at *9. The Federal Circuit agreed however, that restitution provided the proper remedy.

trial court relied on the rule that the non-repudiating party is entitled to restitution "for any benefit that he has conferred on the repudiating party." Amber I, 68 Fed.Cl. at 544 (quoting Restatement (Second) of Contracts § 373 (1981)). Accordingly, the plaintiffs were awarded restitution of the up-front payments they (or their predecessors-in-interest) had paid as consideration for the rights associated with the leases. Whether or not the leases would have been ultimately profitable was not relevant. As the trial court further explained in Amber II, "as Professor Kull explains, rescission is not concerned with inquiries into the profitability of the now-cancelled contract. [citation omitted]. The possibility that the injured party may benefit from the breach by being spared performance of a losing contract is accepted and immaterial." Amber II, 73 Fed. Cl. at 745.[2]

In the Amber Resources appeal to the Federal Circuit, the government argued that restitution was not proper because the plaintiffs did not "establish that they would have been able to obtain the necessary approvals for drilling and production even in the absence of the [the statute]." Amber Resources, 2008 WL 3891567, at *15.[3] The Federal Circuit rejected this

---

[2] Restitution of the lessees' up-front payments was awarded in Amber I, and in Amber II, plaintiffs sought additional damages, also under a theory of restitution, for the sunk costs that they had paid to exploit the leases before work was stopped. First Annapolis has previously cited to Amber II for the comprehensive and thoughtful analysis of reliance and restitution theories of recovery. In Amber II, the trial court found (and the Federal Circuit agreed) that sunk costs could only be recovered on a reliance or expectancy theory of damages, which the plaintiffs had not pursued. Amber II, 73 Fed.Cl. at 747-52; Amber Resources, 2008 WL 3891567, at *19-21. In affirming the trial court's findings on liability and damages, and with the exception of the identification of the repudiating "event" (discussed in note 1 above), the Federal Circuit did not take issue with any of the points analyzed in the exhaustive commentary by the trial court in Amber II.

[3] The Amber Resources Court noted that the government's argument was "quite similar to the causation analysis that this court employed in its decision in the Mobil Oil case and that the Supreme Court rejected when it reversed this court's judgment in that case." Amber

argument, relying on the Supreme Court's decision in Mobil Oil Exploration & Producing Southeast, Inc. v. United States, 530 U.S. 604, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000). The Amber Resources Court found that because the plaintiff lessees were seeking restitution of their initial payments to acquire the leases, and not expectancy damages, "it is irrelevant that other causes may also have prevented them from obtaining the requested suspensions. As the Supreme Court explained [in Mobil Oil], in this context the lessees are not required to show that they would have been successful in obtaining the right to drill and would ultimately have profited from the leases." Amber Resources, 2008 WL 3891567, *15. Thus, restitution was proper "whether the contracts would, or would not, ultimately have produced a financial gain or led them to obtain a definite right to explore." Id. (quoting Mobil Oil, 530 U.S. at 623-24, 120 S.Ct. 2423). Accordingly, First Annapolis' hypothetical future success or failure has absolutely no impact on the availability of restitution as a proper measure of recovery here, and plaintiffs were not required to demonstrate that the bank would have been profitable in the absence of FIRREA.

The Defendant has argued that an award of restitution would bestow a windfall on First Annapolis, by putting it in a better position than if the breach had not occurred. The logic of that argument was rejected by the Federal Circuit in Amber Resources in its ruling that the potential loss of the investment due to an inability to obtain the required suspensions necessary to drill was "irrelevant." 2008 WL 3891567, at *15. In Amber Resources, the government argued that the award of restitution should be limited to the amount of money that the plaintiffs paid to purchase the lease agreements (sometimes at a discount) rather than the amount the *original lessees* initially paid. The government contended that the award of the full amount of the initial

Resources, 2008 WL 3891567, at *15.

payments would be an unfair "windfall." In dealing with the government's windfall theory, the Federal Circuit did not review or re-examine its prior references to the concept of windfall.[4] Rather, it found that its prior cases did not "address the impact of a prior assignment on an award of restitution." Amber Resources, WL 3891567, at *17 -18. The Federal Circuit agreed "with the trial court that any benefits that would not have been a windfall to the original lessees cannot be considered a windfall to the assignees who are entitled to assert all the rights of the original lessees ... ." Id. at *18.[5] Amber Resources provides no support for the Defendant's windfall argument. Moreover, given the Federal Circuit's decision in Amber Resources and its embrace of Mobil Oil, it is difficult to see how the windfall concept could have any impact in this case. In any event, the Government's proof failed to demonstrate, by any standard, that an award of restitution by returning the initial investment of $13,665,907 to First Annapolis, would

---

[4] The Federal Circuit cited Admiral Financial Corporation v. United States, 378 F.3d 1336 (Fed.Cir.2004); Hansen Bancorp, Inc. v. United States, 367 F.3d 1297 (Fed.Cir.2004); and LaSalle Talman Bank, F.S.B. v. United States, 317 F.3d 1363 (Fed.Cir.2003). None of these cases would support a "windfall" finding in this case either: in Admiral, the trial court had found that FIRREA did not injure Admiral; it was already in precarious financial condition, and would have continued in such circumstances regardless of whether FIRREA had been enacted. Admiral, 378 F.3d at 1343. Accordingly, restitution was not appropriate. Id. at 1345. In Hansen, the Federal Circuit remanded the case for a determination of whether there was, in fact a total breach. In providing the trial court with guidance on remand the Federal Circuit discussed the general principal of windfall, but did not provide any further illumination as to what sort of specific situation might amount to an unfair windfall, leaving that task to the trial court. 367 F.3d at 1315, 1318. In LaSalle Talman, the Federal Circuit did not specifically address the concept of windfall, but affirmed the trial court's finding that assumed liabilities (for supervisory goodwill) were not an appropriate measure for restitution damages. 317 F.3d at 1376-77).

[5] While the trial court suggested in Amber II that the Federal Circuit "windfall" cases were "inapplicable" in the case of restitution damages given the holding in Mobil Oil (Amber II 73 Fed. Cl. at 746), the Federal Circuit had no need to reach that issue, deciding on a more limited basis that the assignees of the leases stood in the shoes of the original lessees, and therefore were not subject to the government's windfall argument. 2008 WL 3891567, at *18.

constitute an unfair windfall to Plaintiff.

**CONCLUSION**

For the foregoing reasons, as set forth in its prior briefs, and now, as unequivocally established in Amber Resources, First Annapolis respectfully submits that restitution is the proper measure of recovery in this case.

Dated: September 12, 2008

Respectfully submitted,

COOTER, MANGOLD, TOMPERT
& KARAS, L.L.P.

/s/ Dale A. Cooter
Dale A. Cooter, Esq.
5301 Wisconsin Avenue, NW
Suite 500
Washington, D.C. 20015
Tel: (202)537-0700
Fax: (202) 364-3664
Attorney for Plaintiff First Annapolis Bancorp, Inc.

Of Counsel:

Donna S. Mangold, Esq.
James E. Tompert, Esq.
COOTER, MANGOLD, TOMPERT
& KARAS, L.L.P.
5301 Wisconsin Avenue, NW
Suite 500
Washington, D.C. 20015
Tel: (202)537-0700
Fax: (202)364-3664

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of September, 2008, a copy of First Annapolis Bancorp, Inc.'s Motion for Leave to File Supplemental Authority was served through the Court's electronic service/filing system on:

Scott D. Austin
Scott.Austin@usdoj.gov
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
Washington, D.C. 20530
Attn: Classification Unit, 8th Floor
1100 L Street, NW

Attorneys for Defendant United States

/s/ Dale A. Cooter
Dale A. Cooter